FEDERAL COMPRESS & WAREHOUSE CO. *v.* COLEMAN.*

(Division A: June 15, 1926.  Suggestion of Error Overruled July 12, 1926.)

[109 So. 20.  No. 25702.]

1. WAREHOUSEMEN.

Under Uniform Waterhouse Receipt Act (Laws 1920, chapter 218.) sections 3, 8, 21, 57, warehouseman has burden of showing lawful excuse for failure to deliver cotton stored, and must prove that loss by fire was not due to his negligence.

2. APPEAL AND ERROR.

Under Constitution 1890, section 147, supreme court will not reverse case for error of trial court in refusing to transfer cause to chancery court.

---

*Corpus Juris-Cyc References:  Appeal and Error, 4CJ, p. 1167, n. 94;  Warehousemen, 40Cyc, p. 473, n. 9;  Liability of warehouseman for damages to or destruction of property by fire, see note in 16 A. L. R. 280;  27 R. C. L., p. 1002;  4 R. C. L. Supp., p. 1781;  5 R. C. L. Supp., p. 1492.

APPEAL from circuit court of Alcorn county.

HON. C. P. LONG, Judge.

Suit by Tom Coleman against the Federal Compress & Warehouse Company.  Judgment for plaintiff, and defendant appeals.  Affirmed.

*Green, Green & Potter,* for appellant.

The question of procedure which troubled the mind of the court below was:  Under the Warehouse Act, what is the proper course of pleading?  Our contention is that where plaintiff sues to recover property under a contract of bailment and avers a contract, and failure to deliver upon demand; and the defendant pleads that the goods were destroyed by fire, then plaintiff must

aver that the fire was negligently set out or caused by the warehouseman.

Defendant sought to raise the question sharply by pleading that the warehouse was destroyed and the cotton lost by fire, and to this plea a demurrer was interposed because the plea did not aver that it was lost without negligence and this demurrer was sustained.

The Uniform Warehouse Act styled ".Warehouse Receipts," Hemingway's Code Supp., section 7957-a, *et seq.,* provides for a statutory form of contract and for statutory definition of the measure of responsibility of the warehouseman.

As a part of the contract, the measure of responsibility of the warehouseman is to *safekeep.* Hence, in order to plead this statutory cause of action, it would be necessary not only to aver the execution of the receipt in terms required by section 7957-b, Hemingway's. Code Supp., but that the goods were delivered in pursuance of this receipt and that the bailee agreed to pay the charges therein required, and that he had made a demand in pursuance of section 7957-H accompanied with the offers therein specified and hereinbefore recited, and that the warehouseman had "failed to exercise that degree of care in the safekeeping of the goods which a reasonably careful man would exercise in regard to similar goods of his own," and then specify wherein this degree of care was not exercised.

This statute does not impose liability for *negligence generally* but confines liability to that class of cases in which the law of master and servant applies, nonliability of a fellow servant where the master had exercised reasonable care in the selection of the servant who did the injury.

Turning to the pleading herein, the declaration does not aver any breach of any duty by the warehouseman. To this declaration defendant plead that the warehouse and cotton were destroyed by fire. This was a good plea. 27 R. C. L. 1002; 40 Cyc. 470; *Y. & M. V. R. R. Co.* v.

*Hughes,* 94 Miss. 242, 47 So. 662; *So. R. R. Co.* v. *Prescott,* 240 U. S. 632, 60 L. Ed. 836; *Y. & M. V. R. R. Co.* v. *Hughes,* 94 Miss. 242.

The Warehouse Receipt Act, section 7957-H, Hemingway's Code Supp., after providing conditions precedent to accompany the demands for the goods, recites, "in case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal." It is to be noted that this does not say "burden of proof," but says the "burden" shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal.

Now, the Warehouse Act necessarily is predicated upon principles of law existent and which must be given application in the interpretation of its provisions. 13 C. J. 560, "Contracts."

Negligence is never presumed and destruction by fire is a plea *vis major* and not necessarily connected with the act of the party. It furnishes, as made by the plea, a "lawful excuse." *Hanson* v. *Oregon-Washington R. & Nav. Co.,* 188 Pac. 970; *The Hughes case,* 94 Miss. 242; *Runkle* v. *So. Pac. Milling Co.* (Calif.), 195 Pac. 398; *McCrory Stores Co.* v. *Westside Warehouse Co.,* 171 N. Y. S. 35; *Wilson* v. *Chrystal,* 176 N. Y. S. 341; *Wilson* v. *S. Pac. Ry. Co.,* 62 Cal. 164; *Noel* v. *Schurr,* 140 Tenn. 245, 204 S. W. 32; *Scott* v. *Sample* (La.), 87 So. 478; *McCullom* v. *Porter,* 17 La. Ann. 89; *Firestone Tire Co.* v. *Pac. Tr. Co.* (Wash.), 208 Pac. 55-8; *Whittington* v. *Cameron Compress Co.* (Tex.), 268 S. W. 216-22; *Grady* v. *Blue Line Storage Co.* (Iowa), 190 N. W. 375; *Export & Traders Compress & Warehouse Co.* v. *Schulze* (Tex.), 265 S. W. 133, overruling 253 S. W. (Tex.) 702; *Churchill* v. *Walling* (Ala.), 88 So. 582.

There has been, as shown by the quotations from 40 Cyc. 473; and 27 R. C. L. 1002, a conflict of authorities as to the proper rule of procedure in different jurisdic-

tions and cases can be found holding that the burden of proof is upon defendant to acquit itself of negligence, and denying the established rule of Mississippi and of the supreme court of the United States that where the destruction is by fire, the burden of proof is upon plaintiff to show that the fire was negligently caused by defendant. These receipts show upon their face that destruction by fire was not within the purview of the contract in their recitals that the property is not insured.

The ruling is uniform that a warehouseman is not an insurer, and when in the face of a contract the stipulation appears that the goods are not insured, it bears a doubt aspect; namely, (1) that while the warehouseman is to take care of the property as he would his own, and while ordinary common prudence would dictate that the property, especially combustible property, should be insured, there was no obligation on the part of the warehouseman to insure the property against destruction by fire, lightning or tornado; and (2) that the act does not create an absolute liability for negligence generally, but confines liability to want of care such as an ordinarily prudent man would take of his own property, and this excludes from consideration the material elements of liability which obtain between persons dealing at "arm's length," whereby the goods of one might be entrusted to another for hire.

The rule applicable to carriers, innkeepers, etc., is not within the purview of the Warehouse Act. Exhibit "B" to the declaration, the warehouse receipt, controls the allegations of the declaration. *Hamer* v. *Rigby,* 66 Miss. 41; *Panola Bank* v. *Newman,* 78 So. (Miss.) 517; *House* v. *Gumble,* 78 Miss. 259; *McNeil* v. *Lee,* 79 Miss. 455.

*W. C. Sweat,* for appellee.

The question in this case involves a construction of section 8 of the Uniform Warehouse Receipts Act, chapter 18, Laws of 1920. See also sections 21 and 57 of the Act.

We contend that the plaintiff fully complied with the requirements of the statute when he alleged and proved the delivery of the cotton to the warehouse and his subsequent demand therefor in compliance with the requirements of the act, and the defendant's failure to deliver the cotton.

The defendant plead that the destruction of the cotton by fire, even though not denying that the fire was due to defendant's negligence, constituted a lawful excuse for delivery within the meaning of section 8 of the act.

Under the common law and before the enactment of the Uniform Warehouse Receipts Act, the decisions of the states were not uniform; some states held that where a person deposited goods in a public warehouse and took a receipt therefor and later demanded his goods and offered to return the receipt, then the warehousemen had to show a good excuse for not delivering the goods and that in order to show such excuse it was necessary to show not merely that the goods were destroyed but also without negligence. *Fleishman* v. *So. Ry. Co.*, 76 S. C. 237, 56 S. E. 974; *Beck* v. *Wilkin-Ricks Co.*, 179 N. C. 231, 102 S. C. 313, 9 A. L. R. 554.

Other states held that where the plaintiff made out a *prima-facie* case, as above described, it was sufficient for the warehouseman to show that the goods were destroyed by fire or were stolen, without any showing as to whether the fire or theft were due wholly or in part to the defendant's negligence. In other words, the decisions of this class hold that where the plaintiff proved a lawful demand for the goods and his right to their possession, that raised a presumption of negligence. In that state of the case, it was conceivable that the goods might or might not have been lost or destroyed by the negligence of the defendant. The defendant then had only to allege and prove, as an excuse for nondelivery, some event such as a fire or theft which might or might not have been caused by the defendant's negligence. Then the plaintiff had to go forward with the case and

allege and prove further facts tending to indicate neg-
ligence on the part of the warehouseman. Representa-
tive examples of this class of cases are: *Exporters, etc.,
Warehouse Co.* v. *Schulze* (Tex.), 264 S. W. 133; *Fire-
stone Tire & Rubber Co.* v. *Pac. Transfer Co.,* 120 Wash.
665, 208 Pac. 55. Under the common law the supreme
court of Mississippi has aligned itself with the latter class
of cases. *R. R. Co.* v. *Hughes,* 94 Miss. 242, 47 So. (1908)
662; *Meridian Fair Ass'n* v. *R. R. Co.,* 70 Miss. 808,
2 So. 565.

At this stage in the development of legal reasoning,
the Uniform Warehouse Receipt Act was enacted, in-
cluding the clear and definite provision in the last para-
graph of section 8 that on the making out of a *prima-
facie* case by the plaintiff, the burden shall then be upon
the warehouseman to establish the existence of a lawful
excuse for such refusal. The act does not say that the
burden shall shift back and forth. The act does not
say that the warehouseman shall then have the burden
of proving that the loss of the goods was due to some
act "consistent with the exercise of due care." The act
definitely and affirmatively places the burden of proof
on the defendant. Since it is definitely and affirmatively
fixed by the act that the burden of proof is on the de-
fendant to show the existence of a lawful excuse, when
he fails to deliver the property in compliance with the
terms of the act, what is it that constitutes a lawful ex-
cuse for the failure to deliver to the depositor? To deter-
mine that, we do not have to look beyond the terms of
the act itself.

It is common knowledge that where large quantities
of cotton are stored, it is necessary, to take certain pre-
cautions against fire; and a reasonably careful and pru-
dent owner of a large quantity of cotton in a warehouse
would not think of being without these or similar pre-
cautions. It is easy for the warehouseman to show that
these precautions have been taken; and when he does
make the showing, he has met the burden. Until he

143 Miss.—40.

does make this showing, he has clearly not met the burden which is cast upon him by the act. This is the culmination of the trend of modern legal thought because of the manifest unfairness and harshness of the old common-law rule.

There have been no decisions of the supreme court of Mississippi as to the meaning and effect of the enactment of section 8 of the Uniform Warehouse Act. The exact question for decision is whether under said section the warehouseman has established a lawful excuse for failure to deliver within the meaning of the act when the warehouseman merely shows that the failure to deliver was due to an event which might or might not have been caused by the warehouseman's negligence.

The final paragraph of section 8 has nothing to do with the substantive rights of the parties to the contract of bailment, but affects only the burden of proof. In that respect it is similar to the railroad *prima-facie* statute, section 645, Hemingway's Code. See *Y. & M. V. R. R. Co.* v. *Landrum*, 89 Miss. 399, 42 So. 675; *M. & O. R. R. Co.* v. *Hicks*, 91 Miss. 273, 46 So. 360; *So. Ry. Co.* v. *Murray*, 91 Miss. 546, 44 So. 785; *A. & V. R. R. Co.* v. *Hunnicutt*, 98 Miss. 272, 53 So. 617; *Fuller* v. *I. C. R. R. Co.*, 100 Miss. 705, 56 So. 783; *N. & N. E. R. R. Co.* v. *Cole*, 101 Miss. 175, 57 So. 556; *Jefferson* v. *So. Ry. Co.*, 105 Miss. 571, 62 So. 643.

The underlying reasonableness of both statutes is the same. The railroad *prima-facie* statute was passed, upsetting the time-honored rules of the common law, because of the fact that usually it would be easier for the railroad company to show the facts and circumstances attending an accident than it would be for the plaintiff to show them. Usually, the question of negligence in accidents caused by the running of locomotives, etc., would involve a consideration of what the employees of the railroad company were doing at that time.

Similarly, the question of whether loss or damage to goods stored in a public warehouse was due to the neg-

ligence of the warehouseman necessarily involves a consideration of what the warehouseman and his employees did. Usually, the person who stored the goods with the warehouseman is not present when the accident occurs and can find out the circumstances only with the greatest difficulty.

It is said by counsel for appellants that negligence is never presumed. It is true that ordinary negligence is not presumed, but must be proved; but this act change the common law rule and placed the burden upon the one who, in the very nature of things, should bear it and can easily sustain it.

This question is not to be decided solely with reference to the law of the state of Mississippi, or previous decisions of this court. The legislature has clearly expressed its intention that uniformity shall be a guiding principle in the interpretation of the act, rather than individual lines of thought of the courts in Mississippi. See section 57.

The supreme court of the United States in *Commercial Nat'l Bank of New Orleans* v. *Canal-Louisiana Bank & Trust Co.*, 238 U. S. 520, 69 L. Ed. 417, 36 S. C. 194, had before it a construction of certain sections of the Uniform Warehouse Receipts Act as enacted in Louisiana in 1908. The court said that it was urged that the act was "but a step in the development of the law, and that decisions under the former state statutes are safeguards to its construction." The court, speaking through Justice HUGHES, denied the contention. The case was cited with approbation in *In re Marcuse & Co.* (U. S. Circuit Court of Appeals), 281 Fed. 928 at p. 940. In this last-mentioned case the court was construing what is known as the "Uniform Partnership Act."

Any discussion of the proper interpretation of the construction of the act would, therefore, not be complete without giving careful consideration to interpretations and constructions by the courts of other states.

The effect of sections 8 and 21 on the burden of proof has been considered in only a few cases, so far as we have been able to discover. In the majority of these states the courts have held that these sections clearly place on the warehouseman the burden of proving the existence of a lawful excuse for failure to deliver the goods on demand, and that merely proving that the goods were lost or destroyed by reason of an event which might or might not have been due to negligence, is not sufficient to meet this burden of proof. *Caldwell* v. *Skinner,* 100 Kans. 567, 164 Pac. 1166 (Sup. Ct. of Kans., May, 1917) ; *Leckie* v. *Clemans,* 135 Md. 264, 108 Atl. 684 (Ct. of Appeals of Maryland, Dec. 9, 1919) ; *Rudy* v. *Quincy, etc., Warehouse Co.,* 249 Mass. 492, 144 N. E. 286 (Sup. Judicial Court of Mass.) June 14, 1924.

A splendid statement of the rule under the Uniform Warehouse Receipts Act is found in an opinion of the court of South Carolina, a state where the Uniform Warehouse Receipts Act was at the time in force, in *Fleishman et al.* v. *So. Ry. Co.,* 76 S. C. 237, 56 S. E. 974, 9 L. R. A. (N. S.) 519.

The appellant has cited no authorities where sections 8 and 21 were brought squarely before the court for a construction in which the court construed these sections of the act in accordance with the contention of the appellant; while we have cited numerous authorities hereinabove, decided by courts of last resort, where the question is squarely presented to the court, calling for a construction of sections 8 and 21 of the act, especially the cases of *Caldwell* v. *Skinner, Leckie* v. *Clemmens, Rudy* v. *Quincy, supra.* In the last two states, especially, the rule of law is changed by the court from the common-law rule to the rule placing the burden upon the warehouseman in accordance with the terms of the act.

The case at bar is almost identical with the case of *Caldwell* v. *Skinner, supra.* The declaration in that case

alleged the fact that the defendant's warehouse was destroyed by fire, due to the negligence of the defendant; and the defendant filed a plea, as did the defendant in this case, merely stating that the warehouse containing the goods was destroyed by fire. It was held by the court that this was no sufficient for the defendant, but that the burden was on the defendant to, acquit itself of negligence. This is the true and correct rule in accordance with the provisions of the act.

The court below decided the case at bar according to this rule, and properly construed the act according to the great weight of authority and the cause should be affirmed.

Argued orally by *Marcellus Green,* for appellant, and *W. C. Sweat,* for appellee.

COOK, J., delivered the opinion of the court.

This is an appeal by the Federal Compress & Warehouse Company from a judgment rendered against it in the circuit court of Alcorn county for two hundred twenty dollars, the value of two bales of cotton alleged to have been stored by the appellee with the defendant company at Corinth, Miss., on November 1, 1925, and to have been destroyed by fire on November 12, 1925.

The original declaration filed in this cause averred that the defendant was the successor of the Corinth Compress Company, and that, during the times complained of, it operated a compress for the compressing of cotton at Corinth, Miss., and, in connection therewith, maintained a cotton warehouse in which it stored cotton for hire; that on November 1, 1925, the plaintiff placed with the defendant in its warehouse two bales of cotton, grading "middling or better," which the defendant received for storage; that the plaintiff lost the receipt numbers and weights of said cotton, but the same aggregated one thousand and one hundred pounds; that the warehouse

receipts, a copy of which was attached as an exhibit to the declaration, were never delivered to the plaintiff by the defendant; that these receipts were still in the possession of the defendants, and demand was made upon the defendant to produce them at the trial of the cause. The declaration further averred that it was the duty of the defendant to use all reasonable and proper care to preserve the cotton and to protect it from damage, and that it did not use such due, proper, and reasonable care, but negligently and carelessly allowed the cotton to be burned on November 12, 1925; that the plaintiff had demanded of the defendant his cotton, and, first, had offered to satisfy the warehousemen's lien, second, had offered to surrender the receipts with such indorsements thereon as defendant might require, and, third, had offered to sign, when the goods were delivered to the plaintiff by the defendant, an acknowledgment that the goods had been delivered, if such signature was required by the defendant; that it then became the duty of the defendant to deliver the cotton to the plaintiff, or pay the value thereof, which the defendant refused to do, and there was then a demand for judgment for the value of the cotton.

There were eight other similar suits filed against the defendant, and the defendant filed a motion to transfer each of these suits to the chancery court upon various grounds, which, in view of the conclusion which we have reached upon another phase of the case, it is not necessary here to state. This motion was overruled, and thereupon the defendant filed a demurrer to the declaration. In passing upon this demurrer the court below held that the declaration "did not sufficiently set out how and under what terms the Federal Compress & Warehouse Company became the successor of the Corinth Compress Company, or became connected with or under liability to the plaintiff," and thereupon the plaintiff amended his declaration by inserting therein the following averment:

"And plaintiff further states that the compress so operated by the defendant, Federal Compress & Ware-

house Company, had been, prior thereto, owned and operated by the Corinth Compress Company; and, on or about the 8th day of October, 1925, the defendant, Federal Compress & Warehouse Company, purchased all of the assets of the Corinth Compress Company, including its real estate, machinery, and all of its property, franchises, etc., and took over the operation of the said compress so located and operated at Corinth, Miss.; and that, after the said Compress & Warehouse Company had so purchased, taken over, and begun operations of the said compress, this plaintiff delivered to it, for storage purposes, the aforesaid two bales of cotton, for which no warehouse receipts were delivered to the plaintiff, but for the storage of which plaintiff was able and willing to pay; and plaintiff states that he does not know whether or not the exhibit attached to the declaration, marked 'Exhibit B,' is in the exact form in which the receipts were being issued by the defendant, but charges that, whether the warehouse receipts were actually signed by the Corinth Compress Company, or the Federal Compress Company, said receipts were in fact being issued by the said defendant, Federal Compress & Warehouse Company.''

After the demurrer to the declaration as amended was overruled, the defendant filed a special plea, which averred that—

''It had a lawful excuse for its failure to deliver said cotton herein sued for to said plaintiff, in this, to-wit, that on the 11th day of November, 1925, the entire compress and warehouse wherein this cotton was stored, and this plaintiff's cotton, was destroyed by fire.''

To this plea the plaintiff demurred on the grounds, among others, that the plea does not show that the defendant was not guilty of negligence in allowing the cotton to be burned; that the plea fails to show that defendant used due care in protecting plaintiff's cotton against loss by fire; that said plea does not show that defendant exercised that degree of care in the safe-keeping of plaintiff's cotton which a reasonably careful man would ex-

ercise with regard to cotton of his own; and that said plea does not show the existence of a lawful excuse for defendant's refusal to deliver plaintiff's cotton on demand. This demurrer to the special plea was sustained, and the defendant declining to plead further, a final judgment in favor of the plaintiff for the value of the cotton was entered, and from this judgment this appeal was prosecuted.

The controlling and important question presented for decision by these pleadings is whether, by virtue of the provisions of the Uniform Warehouse Receipts Act, the burden of proof was upon the defendant warehouseman to establish not only that the cotton was destroyed by fire, but also that the fire was not due to its negligence.

Prior to the passage of the Uniform Warehouse Receipts Act, this court held in *Railroad Co.* v. *Hughes,* 94 Miss. 242, 47 So. 662, 22 L. R. A. (N. S.) 975, that in an action against a warehouseman for the value of goods destroyed in a fire which burned the warehouse, the burden is on the bailor, in the absence of proof as to the circumstances of the fire, to show that it resulted from the bailee's negligence.

Under the Uniform Warehouse Receipts Act, chapter 218, Laws of 1920, the obligation of a warehouseman to deliver is found in section 8 thereof, which provides that —"A warehouseman, in the absence of some lawful excuse provided by this act, is bound to deliver the goods upon demand . . . (here follow conditions with which there must be compliance). In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

Section 3 of this act provides that a warehouseman may not insert in a receipt any terms or conditions which shall "in any wise impair his obligations to exercise that degree of care in the safe-keeping of the goods intrusted to him which a reasonably careful man would exercise

in regard to similar goods of his own," while section 21 prescribes the degree of care required of a warehouseman, as follows:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

Section 57 of the act provides that it "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it."

In the case of *Commercial National Bank* v. *Canal-Louisiana Bank & Trust Co.,* 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417, in discussing the effect of prior local decisions upon the construction of uniform acts, Justice HUGHES said:

"It is apparent that if these uniform acts are construed in the several states adopting them according to former local views upon analogous subjects, we shall miss the desired uniformity and we shall erect upon the foundation of uniform language separate legal structures as distinct as were the former varying laws. It was to prevent this result that the Uniform Warehouse Receipts Act expressly provides (section 57): 'This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.' This rule of construction requires that in order to accomplish the beneficent object of unifying, so far as this is possible under our dual system, the commercial law of the country, there should be taken into consideration the fundamental purpose of the uniform act and that it should not be regarded merely as an offshoot of local law. . . . We think that the principle of the uniform act should have recognition to the exclusion

of any inconsistent doctrine which may have previously obtained in any of the states enacting it. . . ."

In the case of *Union Trust Co.* v. *McGinty,* 212 Mass. 205, 98 N. E. 679, Ann. Cas. 1913C, 525, with respect to the Negotiable Instruments Act, and again in *Rudy* v. *Quincy Market & Warehouse Co.,* 249 Mass. 492, 144 N. E. 286, with respect to the Uniform Warehouse Act, the court said:

"It ought to be interpreted in such a way as to give effect to the beneficent design of the legislature in passing an act for the promotion of harmony upon an important branch of the law. Simplicity and clearness are ends especially to be sought. The language of the act is to be construed with reference to the object to be attained. Its words are to be given their natural and common meaning, and the prevailing principles of statutory interpretation are to be employed. Care should be taken to adhere as closely as possible to the obvious meaning of the act, without resort to that which had theretofore been the law of this commonwealth, unless necessary to dissolve obscurity or doubt, especially in instances where there was a difference in the law in the different states."

Applying this principle and construing the act without reference to the holdings of this court upon the question of the burden of proof prior to the passage of the act, we think the effect of the statute is to definitely place the burden of proof upon the bailee to show a lawful excuse for failure to deliver goods upon demand, and in order to do so he must show that he exercised that degree of care in regard to them that a reasonably careful owner of similar goods would exercise. A loss by fire due to the negligence of the bailee was never a lawful excuse for a failure to deliver goods, but under the rule announced in the *Hughes case, supra,* when the bailee proved that the loss of the goods was occasioned by fire, the burden was then shifted to the bailor to prove that the fire was due to the bailee's negligence. The clear import of the language of this statute is to place the burden on

the warehouseman to establish a lawful excuse for a failure to deliver, and this requires more than a mere showing that the failure to deliver was due to an event which might or might not have been caused by his negligence. To meet this burden the warehouseman must show that he exercised that degree of care required by the statute.

Prior to the adoption of the Uniform Warehouse Receipts Act, the Massachusetts court held, in accordance with the common-law rule, that the burden of showing negligence was on the bailor, but in the case of *Rudy* v. *Quincy, etc., Warehouse Company, supra,* that court said:

"It is contended that the common law rule as to burden of proof has been changed by the Warehouse Receipts Act. That act is to a considerable extent a statement in statutory form of the law governing warehouse receipts and the responsibilities and duties of warehousemen. . . . We are of opinion that the effect of the statute is to shift the burden of proof upon this point to the defendant and thus to change the common law in that particular. That is the natural import of the language used. . . . It would be difficult to give a reasonable construction to the statute without attributing to it the force of placing the burden of proof for failure to deliver on the warehouseman."

In *Leckie* v. *Clemens,* 135 Md. 264, 108 A. 684, the defendant warehouseman requested the court to instruct the jury that—"The verdict must be for the defendant unless they shall further find from the evidence that in storing said goods the defendant failed to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, and that such failure was the cause of said loss."

The court modified this instruction by adding:

"And the burden is on the defendant to show by the evidence that in storing said trunk and contents he did use such care."

In discussing this modification the court said:

"The effect of the modification of this prayer is that it places upon the defendant the burden of showing that he exercised the care required of him under this prayer in storing said trunk and contents in his warehouse. Such burden, we think, was properly placed upon him.

"This question has been before the courts many times with the result that in some jurisdictions it has been held that where the property is damaged, destroyed or lost, the burden is upon the bailee to show that the same was not caused by his negligence, while in other jurisdictions it has been held that the burden is upon the bailor to show that the loss sustained by him was caused by the negligence of the bailee. This court, it seems, up to the time of the passage of the Act of 1910, chapter 406, designated as article 14-A (Code, vol. 1, p. 317), adopted the view last expressed, that the burden was upon the bailor to show the negligence of the bailee. (Citing authorities.) After the decisions in the above cited cases, the legislature at its session of 1910 passed the act above referred to" (the Uniform Warehouse Receipts Act).

The court then calls attention to sections 8 and 21 of the act, and discusses the reasonableness of the rule requiring the bailee to prove the exercise of due care, and held that since the passage of this statute, the rule is established in that state that the bailee has the burden of proving due care, or overcoming the presumption of negligence.

In the case of *Caldwell* v. *Skinner*, 100 Kan. 567, 164 P. 1166, the facts and pleadings were the same as in the case at bar, and the supreme court of Kansas there said:

"Cases are cited by defendants which tend to sustain their view, and there is a conflict of authority on the question, but the legislature has provided a different rule for establishing claims of this character. In the act relating to warehouses it is provided that in the absence of lawful excuse the warehouseman upon demand must deliver the goods, upon the payment of the warehouseman's lien, a surrender of the warehouseman's receipt and an

acknowledgment of the delivery. It then provides: 'In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal.' Gen. Stat. 1915, section 4422.

"Under the statute, if it be shown that goods were delivered to the warehouseman in good condition and destroyed, lost or returned in a damaged condition, it then devolves upon him to acquit himself of negligence; that is, to show a lawful excuse for his failure or refusal to deliver the goods in compliance with the demand. Doubtless the legislature considered that the warehouseman who had control of the premises and the goods intrusted to his care was better situated than the depositor to know the facts and circumstances under which the destruction, loss or damage occurred, and is best able to prove them."

The declaration in this cause specifically charges that the cotton was delivered for storage purposes to the defendant, the Federal Compress & Warehouse Company, and the issuance of the warehouse receipts by it, and the failure to deliver the cotton upon demand made in compliance with all the statutory conditions, and we think the demurrer to the special plea filed in the court below was properly sustained, and under section 147 of the Constitution of 1890, which provides that "no judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common law jurisdiction," this court cannot reverse this cause for the error, if any, of the trial court in refusing to transfer the cause to the chancery court. The judgment of the court below will therefore be affirmed.

*Affirmed.*