[Civil No. 3144. Filed March 21, 1932.]

[9 Pac. (2d) 194.]

ALABAM'S FREIGHT COMPANY, a Corporation, Appellant, v. FELIX JIMINEZ, Appellee.

Mr. W. L. Barnum, for Appellant.

Mr. A. R. Edwards, for Appellee.

LOCKWOOD, J.—Felix Jiminez, hereinafter called plaintiff, brought suit against Alabam's Freight Company, a corporation, hereinafter called defendant, to recover the value of certain goods which he claimed he had stored with defendant. The case was tried to a jury, which returned a verdict in favor of plaintiff in the sum of $450, and from the order overruling the usual motion for new trial and the judgment rendered on the verdict, this appeal is taken.

The complaint, after stating the capacity of the parties, set up that plaintiff was the owner of certain personal property which he delivered about the first day of February, 1929, to defendant, to be safely kept by the latter and delivered to plaintiff in good condi-

tion upon demand. It then alleged a demand for delivery and a refusal, together with the value of the property so detained, and prayed for judgment in the amount of such value.

Defendant filed a general demurrer and general denial, and thereafter an amended answer, admitting the receipt of the property of plaintiff for storage, but alleging that it was destroyed by fire before demand for delivery was made, due to causes unknown to defendant, and for that reason the latter was unable to deliver it. Plaintiff replied, admitting the destruction of the property by fire, but alleging that such destruction was caused by certain acts of negligence on the part of defendant, naming them. Defendant moved to strike the reply, which motion was denied, and then filed a second amended answer, denying any negligence and alleging that it had used all reasonable care for the protection of the property, and that the loss was occasioned by some cause beyond its control. The case went to trial upon the issues raised in the pleadings aforesaid.

There are two provisions of the Uniform Warehouse Receipts Act the construction of which will in our opinion determine the result of this appeal. These provisions we quote in part as follows:

"A warehouseman, in the absence of some lawful excuse provided by this chapter, is bound to deliver the goods upon a demand made either by the holder of a receipt for the goods or by the depositor. . . . If the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal." Section 3231, Rev. Code 1928.

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall

not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care.'' Section 3244, Rev. Code 1928.

Obviously, construing these two sections together, the warehouseman must deliver the goods as received unless they have been injured by something which could not have been avoided by his exercise of the care which a reasonably careful owner of similar goods would exercise regarding his own. This rule is conceded to be correct by both plaintiff and defendant.

The question next arises, and this is the vital issue in the case, as to where the burden lies in regard to proving whether or not the care so required has in fact been exercised. It is generally agreed by the courts that where the bailor of goods waives his action in contract and sues in tort he must sustain the burden of proof throughout and, if he alleges negligence, must prove it. On the other hand, if he sues in contract, as in this case, alleging the delivery of goods and a demand for their return, and the defense is that the goods are lost or destroyed, there is a conflict of authority. Many of the courts hold that the burden of showing negligence in caring for goods is still on the bailor; others consider that the bailee must affirmatively prove ordinary care.

The question is one of first impression in this jurisdiction, and after considering all of the authorities and the reasoning of the cases, we are of the opinion that the rule so clearly enunciated in the late case of *Traders' Compress Co.* v. *Precure,* 140 Okl. 40, 71 A. L. R. 759, 282 Pac. 165, is the better sustained by reason. We quote therefrom as follows:

''That is, if the bailor sues the warehouseman in tort and alleges the warehouseman was negligent or at fault in the loss and destruction of the goods, the bailor must sustain his case throughout by the bur-

den of proof. On the other hand, if the bailor sues on contract, alleging the delivery of the goods to the warehouseman, thereafter makes a lawful demand for the return of the goods, and the warehouseman refuses or fails to return the said goods, the warehouseman must then, in order to legally excuse himself, show that the said goods were lost or destroyed without his fault or negligence.''

The facts surrounding the loss of stored goods, and particularly the precautions · necessary to prevent loss, are almost invariably either known to the warehouseman or can easily be .ascertained by him. On the other hand, the owner of property frequently, and indeed generally, does not and cannot know these facts without great effort, if at all, and to impose on him the burden of determining just what precautions should be and have been taken is to impose on him an almost impossible task, and make him in effect at the mercy of the warehouseman. The warehouseman might be guilty of the grossest negligence, and yet, because of his possession of the goods, and the usual character of his business, it would be almost impossible for the owner to show negligence, while on the other hand the former, if he has exercised proper care, can in most cases show the fact without difficulty. *Leckie* v. *Clemens,* 135 Md. 264, 108 Atl. 684; *Fleischman, Morris & Co.* v. *Southern Ry.,* 76 S. C. 237, 9 L. R. A. (N. S.) 519, 56 S. E. 974; *Beck* v. *Wilkins-Ricks Co.,* 179 N. C. 231, 9 A. L. R. 554, 102 S. E. 313; *Rudy* v. *Quincy Market etc. Co.,* 249 Mass. 492, 144 N. E. 286; *Caldwell et al.* v. *Skinner et al.,* 100 Kan. 567, 164 Pac. 1166; *Federal Compress etc. Co.* v. *Coleman,* 143 Miss. 620, 109 South. 20.

We hold, therefore, that when suit is brought against a warehouseman on his contract of bailment, and a defense is made that the goods have been destroyed, the burden of proof is on him to show, not merely the destruction of the goods, but that they

were destroyed under circumstances which show that he was using such care in regard to them as a reasonably careful owner of similar goods would exercise. And the question as to whether such care was used is ordinarily one for the jury.

The facts in this case, taken in the strongest manner in support of the verdict, show as follows: Plaintiff was the owner of certain personal property which he desired to store for a time. He approached defendant's agent in Miami and made arrangements for such storage, the two picking the particular place in the building then occupied by defendant where the goods should be placed. This building was in substance a large barn or warehouse, half of which was occupied by defendant, and the other half by a firm engaged in the automobile garage business. The building was divided through the middle by a screen wire partition, open to the vision, but preventing free passage from one part to the other. There was a loading platform for automobile trucks in the part occupied by defendant, and just across a narrow space, but in the building was an office and bedroom which were used by defendant's employees. At one end of this space was a deep pit, covered by heavy planks which had at some previous period been thoroughly saturated with grease. In the pit and under the platform there was a certain amount of rubbish and litter of the kind which usually accumulates in such places.

The two places of business were open to the general public and were frequented during business hours of the day by various people; employees, customers and visitors, many of whom were in the habit of smoking cigarettes in the usual manner. No watchman was employed by defendant on its premises after the usual day's business was concluded, nor was there any fire-fighting apparatus therein, al-

though on the other side of the screen partition the garage owners did have Pyrene fire-extinguishers and a small hose.

Defendant's place of business was closed for the day about 7:30 P. M. April 11, 1929. About half an hour later Arthur Kempton, one of the owners of the garage above mentioned, who was in his place of business, noticed a fire had broken out either in the office or the bedroom referred to above as being in defendant's part of the building. When the fire was discovered it had reached too great intensity to be controlled by the fire-extinguishers or the hose in Kempton's place of business, and the fire department was called, which succeeded in putting out the fire, but not until after the building and its contents had been almost destroyed.

Can we say that the jury was bound to find a preponderance of the evidence showed affirmatively that defendant had exercised ordinary care in the protection of its premises and plaintiff's property? We think the question was for the jury, and we cannot say affirmatively that the record does not support its verdict under these circumstances.

Objection is made by defendant to the action of the court in refusing to strike plaintiff's reply. We think, however, that even if technically speaking the motion should have been granted, no harm was done by allowing it to remain in. As we have said, the burden was upon defendant to show that it was free from fault. The jury has held that it has not sustained that burden.

The judgment of the superior court of Gila county is affirmed.

McALISTER, C. J., and ROSS, J., concur.