216 P.2d 420

**RAILWAY EXPRESS AGENCY v. SCHOEN.**

No. 5121.

Supreme Court of Arizona.
March 20, 1950.

88

Evans, Hull, Kitchell & Jenckes, Joseph S. Jenckes, Jr., of Phoenix, for appellant.

W. Dean Nutting, of Holbrook, and Jacob S. Alpert, of Phoenix, for appellee.

UDALL, Justice.

J. Schoen, as plaintiff (appellee), brought suit against the A. T. & S. F. Railway Company and the Railway Express Agency to recover damages in the sum of $2,009 alleged to have been suffered by him in connection with a shipment of some twenty cartons of merchandise (principally costume jewelry) weighing approximately 1200 pounds. The amended complaint alleged that the shipment arrived at Holbrook, Arizona, "in such a damaged condition as to be wholly valueless, and many items of said shipment were missing" and that this was caused "as a result of the careless and negligent handling of the defendants." The case was tried to the court sitting without a jury. The trial court held the plaintiff had not established his claim as to the articles alleged to be missing but had established the damaged condition of the shipment. Judgment was thereupon entered for the plaintiff against (1) the Santa Fe for the sum of $120.40 (which award was based upon the declared value of the shipment—Gulf, Colorado &

Santa Fe Railway Co. v. McCandless, Texas, Tex.Civ.App., 190 S.W.2d 185); and (2) against the Railway Express Agency for the sum of $1,028.88. This appeal is by the latter defendant only.

While there are some three assignments of error, in the view we take of it, it is only necessary to consider the vital question as to whether the evidence is sufficient to establish negligence on the part of the Railway Express Agency as a warehouseman, for if that proof is lacking the judgment against the latter cannot stand. The matter of damages to the shipment caused by the Santa Fe while in transit or the sufficiency of the evidence to sustain the damages actually awarded by the trial court against Railway Express Agency are not now an issue, and hence need not be considered.

The evidence, stated in the light most favorable to a sustaining of the judgment, shows that about May 1, 1946, the plaintiff delivered to defendant (appellant) at Bergenfield, New Jersey, the shipment in question for transportation by it to Dallas, Texas. The goods were consigned to the shipper in care of defendant with instructions to hold the same at Dallas until called for. The goods arrived at that destination safely and were thereafter stored by defendant as a warehouseman in its "on hand department." The defendant's business in Dallas occupies "a tremendously big storage space" to wit: the entire basement under the large Union Terminal Building.

The "on hand department" alone is approximately fifty feet in width and two hundred feet long. Stored in this department are all the goods received by defendant which are not to be delivered in Dallas. As this department was then stored to its approximate capacity with goods, two cartons, out of the twenty containing plaintiff's shipment, were placed on the floor as there was not sufficient storage space in the bins provided for that purpose.

The record further shows that during the night of May 28–29, 1946, there occurred a tremendous and unprecedented storm in Dallas. There were 6.22 inches of rainfall during a 24-hour period and 4.27 inches of this fell within a 2-hour period. This was the heaviest rainfall experienced in Dallas since the establishment of the weather bureau there in 1913. By reason of the downpour, water seeped into the basement through the doors and windows. The wind reached a velocity of 47 miles per hour and as a result of the storm the electric power for lighting and other purposes failed and was not restored until 8 a. m. the following morning. The basement used by defendant is so constructed that artificial lighting is required at all times. With the power failure defendant's employees were unable to carry on their duties.

The next morning the two cartons of plaintiff's shipment that were on the basement floor were thoroughly water-soaked. They were taken to another room, the con-

tents removed, dried, and repacked, and there is no claim this salvage operation was not promptly and skillfully done.

Early in September, 1946, in accordance with plaintiff's instructions, his stored goods were shipped via freight to him at Holbrook, Arizona. The shipment arrived in a somewhat dilapidated condition and the owner, seeing for the first time the damage to his goods, commenced this litigation with the result heretofore stated.

 There is ample evidence to sustain the lower court's finding that plaintiff's goods were damaged by the soaking they received in defendant's warehouse in Dallas. Quaere: Was the defendant, under the facts shown, legally responsible for the resulting damage, or was the damage occasioned by a providential cause? The defendant contends the sole and only cause of the damage sustained was the torrential storm which could not have been foreseen or provided against by defendant. The law controlling in such a situation is well stated in the case of H. A. Johnson & Co. v. Springfield Ice & Refrigerating Co., 143 Mo.App. 441, 127 S.W. 692, 697: "The defendant cannot escape the consequences of its negligence because the flood was an act of God. It is a well-settled principle that, if the defendant's negligence commingled with and operated as a contributive element proximate to the injury, it is liable even though such injury was due to an act of God. In order for the defendant to escape liability under the exemption afforded by law, the act of God *must be the sole* and only cause of the injury, and this, too, unmixed with the negligence of the defendant, for if the defendant's negligence commingled with it in the loss as an active and co-operative element, and the loss is proximate thereto, or, in other words, is a reasonable consequence of the negligent act, it is regarded in law as the act of the defendant rather than as the act of God. * * *" (Emphasis supplied.) See also 67 C.J., Warehouseman and Safe Depositaries, Sec. 84.

 During the period of nearly four months that defendant held plaintiff's goods stored in its warehouse in Dallas it held them as a warehouseman, not as a carrier, and hence its liability must be determined under the law of bailments. This rule is stated in 9 Am.Jur., Carriers, Sec. 687: "* * * The authorities are in harmony in holding that when goods have arrived at their destination, and at the request and for the convenience of the consignee are allowed to remain in the custody of the carrier, its liability as an insurer of the goods thereupon ceases and becomes thereafter ordinarily that of a warehouseman or a depositary. * * *"

 A warehouseman is not an "insurer" but is a bailee for hire, and is held to that degree of care which a reasonably careful man would exercise in regards to similar goods of his own. In other words he is bound to exercise only ordinary diligence or a "reasonable" degree of prudence

in caring for the goods stored. 56 Am.Jur., Warehouses, Sec. 127; 67 C.J., Warehouseman and Safe Depositaries, Sec. 83; Alabam's Freight Co. v. Jiminez, 40 Ariz. 18, 9 P.2d 194; Gross v. O. K. Storage & Van Co., La.App., 163 So. 769; Merchants Ice & Cold Storage Co. v. United Produce Co., 279 Ky. 519, 131 S.W.2d 469.

■ Applying these principles of law to the facts in the instant case it is apparent that the plaintiff has wholly failed to establish negligence on the part of the defendant unless it can be said that leaving of two of plaintiff's cartons on the floor constituted negligence per se. There is not a scintilla of evidence as to any other act that might be termed negligence on defendant's part. As a matter of fact the only evidence as to any of these matters comes from the depositions given by two of defendant's agents at Dallas.

■ Certainly the plaintiff had the burden of proving his allegations as to negligence for as we said in the case of Alabam's Freight Co. v. Jiminez, supra [40 Ariz. 18, 9 P.2d 195]: "It is generally agreed by the courts that where the bailor of goods waives his action in contract and sues in tort he must sustain the burden of proof throughout and, *if he alleges negligence, must prove it.* * * *" (Emphasis supplied.)

The testimony in this case, wholly uncontradicted, shows one of the most violent and extraordinary rainstorms ever known in Dallas. The evidence further shows that the storm was wholly unanticipated. There was no evidence that water had ever entered the storage basement before or that defendant had any reason to foresee that water would get into the basement or cause damage to goods resting upon the floor of the warehouse. There is no showing that there was anything unusual or improper in permitting stored goods to remain on the floor rather than to be placed in bins, or that any loss had ever been sustained previously by such practice. This significant statement appears in the United Produce Co. case, supra [279 Ky. 519, 131 S.W.2d 472]: "Men are not called upon to guard against every risk that they may conceive as possible but only against what they can forecast as probable."

The only two cases cited by plaintiff and upon which it primarily relies for an affirmance are H. A. Johnson & Co. v. Springfield Ice & Refrigerating Co., supra, and Springfield Chrystallized Egg Co. v. Springfield Ice Refrigerating Co., 259 Mo. 664, 168 S.W. 772. They are readily distinguishable from a factual standpoint as in both cases there was substantial evidence of negligence on the part of the defendants to justify the findings of the jury. For instance in the first case cited the court held the jury "were authorized to conclude that means were at hand with which the goods could have been quickly elevated to the next floor or to a place of safety, and that the loss which ensued would not have taken place had not the

neglect and inattention of the defendant's employes co-operated with the flood in producing the result * * *." [143 Mo. App. 441, 127 S.W. 698].

In the latter case there was even a stronger showing of negligence as the appellate court stated [259 Mo. 664, 168 S. W. 779]: "* * * defendant had warning of the unprecedented rain, the flooded streets, the bursted banks of Jordan, that water was everywhere and must seek its level, according to its own law, and to do so would search every nook, crevice, and cranny, *even to run up a sewer into a connected basement.* * * *" (Emphasis supplied.)

We hold that inasmuch as there was no contrariety in the facts as to so-called acts of negligence by defendant, but one reasonable legal conclusion can be drawn therefrom, i. e., that the plaintiff failed to prove his case.

As there is nothing in the record to indicate that defendant failed to exercise that degree of care with respect to the storage of plaintiff's goods that a reasonably prudent owner would have exercised under like circumstances, the judgment is reversed with directions to enter judgment for the defendant Railway Express Agency.

LA PRADE, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.