**BARLOW UPHOLSTERY & FURNITURE CO. et al., Plaintiffs and Appellants,**

v.

**William EMMEL, dba Noyce Transfer & Warehouse Company, Defendant and Respondent.**

**No. 13640.**

Supreme Court of Utah.

March 21, 1975.

**901**

George K. Fadel, Bountiful, for plaintiffs and appellants.

Timothy R. Hanson, of Hanson, Wadsworth & Russon, Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Plaintiffs appeal from an adverse jury verdict which rejected their claims for damages for furniture and appliances which were destroyed by fire while stored in defendant's warehouse, 736 West on Third South, in the business service area of Salt Lake City the night of July 24, 1972. They argue that there was no jury ques-

1. This rule is codified in Sec. 70A–7–204, U.C.A.1953; and see 56 Am.Jur., Warehouses, Sec. 128.

tion and that they are entitled to prevail as a matter of law.

The plaintiffs, other than Westinghouse, are dealers in furniture and appliances who pool their orders from some manufacturers to avail themselves of carload rates. They have the merchandise shipped to the defendant's warehouse where it is held until picked up or otherwise delivered to the plaintiffs. The warehouse has 30,000 square feet of floor space and is constructed almost entirely of non-flammable materials, concrete block walls, concrete floors, with tar and gravel roof, but had doors and trim of wood. Defendant is also a certificated common carrier and delivers some of this merchandise.

The Utah State holiday, July 24, in 1972 fell on Monday, so there was a long weekend. Defendant William Emmel closed his warehouse on Friday afternoon, July 21, and went home. He knew nothing and heard nothing further until a phone call about 11:30 p. m. Monday, telling him that there was a fire in his warehouse. The fire department had received and responded to the alarm about 30 minutes earlier but, insofar as we are concerned here, the building was totally burned inside and the plaintiffs' merchandise destroyed. From the fire department investigation the fire appeared to have started in the central part of the building near the switch and fuse boxes through which its electrical supply came.

No question is raised about certain propositions which relate to this controversy: that the defendant as bailee has a duty to exercise reasonable care and caution commensurate with acceptance of the responsibility of safekeeping the property of others entrusted to him;[1] and that if it is destroyed during bailment, a presumption arises that it was through his fault; and the burden is upon him to prove lack of fault.[2]

2. See Romney v. Covey Garage, 100 Utah 167, 111 P.2d 545.

Plaintiffs' claims as to defendant's negligence are that he failed to use reasonable care in (1) inspecting for defects in the electrical system; (2) in failing to have an automatic sprinkler fire extinguishing system; and (3) in failing to have a night watchman.

The defendant's opposition to these charges can be commented on generally.[3] There is undoubtedly sufficient evidence from which the jury could have believed that the fire started near the electrical switch boxes; and it is unquestioned that there was some old and improper wiring. But there is also a basis in the evidence from which they could reasonably have believed: (a) that the electrical wiring was not the cause of the fire; and/or (b) that the defendant used reasonable care.

Defendant points to the evidence of the fire department inspector that the fire appeared to have burned upward from the floor in the area where the switch boxes were located upon the wall about six feet above. In any event, the conclusion stated by the fire inspector was that the cause of the fire could not be determined. Further, the defendant had taken over this warehouse from a prior operator. He and his foreman testified that in the over three years since they had had it they had had no electrical troubles and had made no changes in the system; that there had been no previous fires in the warehouse; that they observed various safety precautions in the stacking of merchandise away from any electric wiring or conduits, maintaining manual fire extinguishers in the building, following generally good housekeeping practices and allowing no smoking in the warehouse area.

Defendant cites cases, with which we agree in principle, that it is not negligence as a matter of law that a warehouse does not have a night watchman; and likewise as to an automatic sprinkling system; but whether the exercise of reasonable care requires those precautions depends upon the circumstances and are thus questions for a jury to determine.[4]

Due to the dispute in the evidence and the contentions concerning it, the trial court submitted the critical issue to the jury in accordance with the principle hereinabove set forth: that the defendant had the burden of proving that he was free from negligence. They were given this question:

> Was the defendant . . . free from negligence in the operation of his warehouse?

To this they answered: "Yes." It is our opinion that this finding of the jury is not vulnerable to attack because it falls within the protection of the standard rule of review: that where that verdict finds any reasonable support in the evidence it will not be disturbed on appeal.[5]

A separate argument is made on behalf of plaintiff Westinghouse: that as to its merchandise, defendant was a common carrier and liable as an insurer. One aspect of its argument is that it made the same contentions as Eldredge Furniture Co., for whom the court directed a verdict; and therefore, it also should have ruled for Westinghouse. The reasoning is spurious. We are not here concerned with whether the trial court was right or wrong in its ruling as it did for Eldredge, but whether it was right or wrong in its ruling as to Westinghouse.

We have no disagreement with Westinghouse's contention that while the defendant had its merchandise as a common carrier it is responsible as an insurer;[6] nor that the temporary warehousing during transit, or at the end thereof, does not change that status so long as

---

3. We review the facts favorable to the jury's verdict. Memmott v. United States Fuel Company, 22 Utah 2d 356, 453 P.2d 155.

4. A case closely analogous to the instant one on facts and reasoning is Hipps v. Henning, 167 Colo. 358, 447 P.2d 700. See also Cole v. Younger, 58 N.M. 211, 269 P.2d 1096.

5. Ewell and Son, Inc. v. Salt Lake City Corporation, 27 Utah 2d 188, 493 P.2d 1283.

6. 14 Am.Jur.2d, Carriers, Sec. 508.

it is done for the convenience of the carrier and as part of the transportation.[7] But the status changes to warehouseman where, as here, the goods have arrived at their destination, and the warehousing is done as a separate service at the request of or for convenience of the shipper, or of the consignee.[8] The testimony of Westinghouse's own manager, Edward C. Whitmore, was that the Westinghouse merchandise was not designated for immediate delivery to named consignees, but was held in defendant's warehouse until it was ascertained whether and when they were willing to accept the merchandise, and delivery was so arranged and ordered. Accordingly, the trial court correctly included Westinghouse in submitting the issue as to defendant's negligence as a warehouseman.

Affirmed. Costs to defendant (respondent).

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.

7. 93 C.J.S. Warehousemer and Safe Depositories § 2.

8. 13 Am.Jur.2d, Carriers, Sec. 404. See also, Railway Express Agency v. Schoen, 70 Ariz. 87, 216 P.2d 420.