Clark **STAHELI** and Lynette Staheli, his wife, and Donald L. Staheli and Afton Staheli, his wife, dba Staheli Farms, Plaintiffs and Appellants,

v.

**FARMERS' COOPERATIVE OF SOUTHERN UTAH,** a corporation, Defendant and Respondent.

No. 17130.

Supreme Court of Utah.

Sept. 28, 1982.

---

Durham Morris, Cedar City, for plaintiffs and appellants.

J. MacArthur Wright, St. George, for defendant and respondent.

STEWART, Justice:

The Stahelis, plaintiffs in this action, hired the defendant, Farmers' Cooperative of Southern Utah (Coop), to store 328,470 lbs. of barley pursuant to an oral contract of bailment. Fire of an unknown origin destroyed the warehouse and a large part of the stored grain. Other farmers who stored grain in the warehouse and sustained losses in the fire assigned their claims to the Stahelis who sued the Coop for the total amount of the loss. The trial court entered judgment for the Coop. The Stahelis' basic contention on appeal is that they were entitled to a presumption that the Coop was negligent as a matter of law and that the Coop did not rebut that presumption. It is conceded by the parties that there is no evidence as to actual cause of the fire.

The Coop is engaged in the business of providing grain storage for local farmers in Washington County, Utah. Generally it stores the grain in steel facilities, but in the fall of 1976 the Coop's warehouses could not accommodate the storage requirements of all the farmers in the area. Consequently, the Coop leased one-half of a large potato cellar owned by Stan Holt Cellar and Storage Company to provide temporary additional storage capacity. The portion of the cellar not leased to the Coop was retained and used by the owner for its purposes. There was no wall or partition between that part of the pit leased to the Coop and that part retained by Holt for its own use. The farmers whose grain was stored in Holt's potato cellar knew that the Coop was using that facility for their grain because they had hauled their grain into and out of the potato pit.

The potato pit was made primarily of wood and was surrounded by grass which could have been ignited by a lighted cigarette. The doors to that part of the cellar retained by Holt could not be locked to keep intruders out. The doors to that part of the cellar leased to the Coop were opened and closed by an electric motor; but at the time of the fire, the motor was not operating and the doors, having to be opened and closed by hand, were frequently left open. Burlap bags and a smudge pot containing oil had been left by a prior user of the pit in the Coop's portion of the storage facility.

At trial the Stahelis relied on a presumption of negligence by the Coop. They also pleaded specific acts of negligence and adduced evidence that the Coop had failed to (1) install locks on the doors of the storage facility; (2) keep the doors closed; (3) remove from the building burlap sacks and a smudge pot containing a substantial quantity of fuel oil; and (4) take any action to prevent transient laborers from loitering in and about the storage facility.

The trial court expressly found that the Stahelis knew that their grain would be stored in the potato pit and that the owner of the pit retained possession of half the facility; the Stahelis as well as agents of the Coop had unlimited access to the pit through both the end leased to the Coop and the end retained by the owner; there were transients who were observed in or around the potato pit on October 6, 1976; and "the origin, cause or exact location where the fire commenced are [sic] unknown." In its conclusions of law, the trial court stated: "Defendant exercised the care that could reasonably have been expected under the circumstances and that no negligence on the part of the Defendant was shown by the Plaintiffs," and "without a showing of negligence on the part of the Defendant, Defendant is not responsible for the fire of unknown origin which caused the loss."

The trial court also wrote a thorough memorandum opinion, stating in considerable detail its reasons for ruling for the Coop. The court stated, *inter alia:*

> that all of the parties were aware of the easy access to all parts of the potato pit at all times crucial herein; and most if not all, along with the third-party owner of the potato pit and others, were in and out of the premises as they desired or as their business dictated. Doors were left open and little or no concern was expressed by anyone concerning the other stored equipment or materials, which Plaintiffs would now have this Court find

constituted an unreasonable risk of the loss that actually occurred or that the Defendant has a responsibility under the law to control transients at or near the premises, which Plaintiffs further hypothesized may have caused the fire.

While this Court recognizes the principle that ordinarily fires of this kind do not occur in the absence of negligence, under the facts of this case the Court is unable to assess any causative factor and to speculate that the fire was more likely to have occurred from spontaneous combustion of grain, or by reason of smudge pots or burlap bags stored elsewhere in the potato pit, or by reason of some act of third parties who had lawful access to the premises, or by reason of transients sunbathing on the roof, or by reason of an arsonist, or by one or more of the Plaintiffs in storing or removing grain in their own behalf, would be as fruitless as it is unlimited in scope.

On appeal, the Stahelis contend that by establishing the existence of their bailment contract and the failure of the Coop to return the bailed goods on request, they were entitled to the presumption that the fire was caused by the Coop's negligence. The Stahelis further contend that the Coop failed to establish its own due care. The Coop, on the other hand, maintains that the burden of proof did not shift to it because it did not have " 'exclusive possession' " and therefore had no " 'better opportunity to know the cause of injury or manner of the loss' " than the Stahelis. *Sumsion v. Streator-Smith, Inc.,* 103 Utah 44, 59–60, 132 P.2d 680, 687 (1943).

 The general rule of law is that where goods bailed for a fee are damaged or destroyed a presumption of negligence is imposed on the bailee once the bailor proves the fact of bailment and damage to the bailed goods. The bailee must then come forward with evidence that the loss or damage was not due to the bailee's negligence.[1]

1. The basic procedural rules governing the burden of producing evidence and burden of persuasion in a bailment case were established in *Romney v. Covey Garage,* 100 Utah 167, 111 P.2d 545 (1941), and in *Sumsion v. Streator-Smith, Inc.,* 103 Utah 44, 132 P.2d 680 (1943).

*Barlow Upholstery & Furniture Co. v. Emmel,* Utah, 533 P.2d 900 (1975); *Sumsion v. Streator-Smith, Inc.,* 103 Utah 44, 132 P.2d 680 (1943); *Romney v. Covey Garage,* 100 Utah 167, 111 P.2d 545 (1941); *see White v. Pinney,* 99 Utah 484, 108 P.2d 249 (1940).

■ Although the authorities are divided as to whether a fire of unknown origin is sufficient to rebut a prima facie case of negligence established by the presumption, 8 C.J.S. *Bailments* § 50 (1962), the rule in this jurisdiction is that if the factual preconditions for imposition of the presumption are met, a fire of unknown origin is presumed to have been caused by the bailee's negligence and the bailee must then shoulder the burden of showing lack of fault. *Barlow Upholstery & Furniture Co. v. Emmel,* Utah, 533 P.2d 900 (1975); *Wyatt v. Baughman,* 121 Utah 98, 239 P.2d 193 (1951); *cf. Romney v. Covey Garage,* 100 Utah 167, 111 P.2d 545 (1941).

■ The policy that sustains the presumption arises from the practical consideration that one who is in possession of another's property is in a better position to control the conditions that may cause loss or damage and to know, or at least to be able to ascertain, the cause of any actual loss or damage. A predicate of the presumption, therefore, is that the bailee be in exclusive possession, and it is that proposition that gives logical force to the presumption. *Sumsion v. Streator-Smith, Inc.,* 103 Utah 44, 132 P.2d 680 (1943). The Court in *Sumsion* stated: "The cases almost universally hold that this inference of negligence will not arise in those cases where the bailor shows by his pleading or proof that he had the same opportunity to ascertain the facts as did the bailee. It is a rule based on necessity and will not apply if the necessity does not exist." *Id.* at 60, 132 P.2d at 687. In addition, the bailee's expectation of making a profit would normally lead a prudent person to take appropriate care of the entrusted property. *See Romney v. Covey Garage,* 100 Utah 169, 111 P.2d 545 (1941).

■ Notwithstanding the presumption, the law does not make the bailee for hire a guarantor; it is a rule of fault with which we deal. Thus, the presumption allocates the burden of proof to the party most likely to have access to the evidence and, in the absence of evidence, places liability on the party most likely to have been able to avert the loss.

This Court has observed that the evidentiary rules governing bailment are in some respects similar to those governing the doctrine of *res ipsa loquitur,* although there are important procedural differences. *Romney v. Covey Garage,* 100 Utah 167, 111 P.2d 545 (1941).[2] Exclusive control of, or responsibility for, the instrumentability causing the injury is necessary to give rise to an inference of negligence under the doctrine of *res ipsa loquitur. Joseph v. W.H. Groves Latter-day Saints Hospital,* 10 Utah 2d 94, 348 P.2d 935 (1960); *Wightman v. Mountain Fuel Supply Co.,* 5 Utah 2d 373, 302 P.2d 471 (1956). Although these cases do not expressly hold that the defendant must be in a better position than the plaintiff to

Notwithstanding the presumption of negligence which arises after proof of a prima facie case, the burden of persuasion remains with the bailor, but the burden of going forward with the evidence shifts to the bailee to show he was not negligent or to explain that his conduct was not the proximate cause of the accident. If the bailee proves due care, and the bailor relies on nothing more than the presumption, a directed verdict in bailee's favor would be appropriate; if the bailee adduces some evidence of due care, the issue is for a jury. The nature of the presumption, however, requires that in the absence of any evidence supporting the bailee's position, the issue must be resolved in favor of the bailor. *See also Clark-Nomah Flying Club v. Sterling Aircraft, Inc.,* 17 Utah 2d 245, 408 P.2d 904 (1965); 9 J. Wigmore, Evidence § 2491 (J. Chadbourn rev.1981).

2. Professor Prosser, referring to 4 J. Wigmore, Evidence § 2509 (1st ed. 1905), sets forth the three conditions generally considered necessary to invoke *res ipsa loquitur:*

(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

W. Prosser, Law of Torts § 39 at 214 (4th ed.1971).

ascertain the facts giving rise to an injury, the requirement that the defendant have either exclusive control or responsibility for the causative agent essentially has the same effect.

■ The record in this case clearly establishes that the Coop did not have "the right or power of control." The trial court's findings are unchallenged that Holt, the Stahelis, and the Stahelis' assignors had lawful access to the potato pit. Indeed, the trial court specifically found that "Plaintiffs, as well as the agents of the Defendant, had unlimited access to the said potato pit either through the doors on the end temporarily leased by the Defendant or through the doors on the end retained by the owner, neither of which was locked." Furthermore, it is not even established whether the fire started in that part of the facility retained and controlled by Holt or in that part leased by the Coop.

We readily concede that the record contains evidence of carelessness on the Coop's part, but there is also evidence of the Stahelis' negligence and, indeed, the possibility of negligence on the part of third parties. The retention of the oil-filled smudge pot and burlap bags in an area of the pit accessible through both Holt's side and the Coop's side, as well as the existence of intruders in the vicinity who sought shelter in the warehouse, raises the possibility that any of the above-mentioned parties may have negligently started the fire. Furthermore, the fire could have been caused by a lighted cigarette thrown on the grass near the wood structure or by spontaneous combustion, as the trial court suggested.

The right to control these events and conditions was not exclusively or even primarily the duty of the Coop. Indeed, the lack of control and adequate precautions was a result, to some extent, of the emergency situation arising from the need to store surplus grain beyond that which the Coop's facilities could accommodate. In sum, the trial court properly held that a presumption of negligence did not arise because of the absence of the Coop's exclusive control of the premises. Under the circumstances the Coop was in no better position than the Stahelis to know, or to be able to ascertain, the cause of the fire or to control several of the possible causes of the fire.

■ Finally, the Stahelis failed to make out a case based on the specific acts of negligence alleged in the complaint, irrespective of a presumption, because of the absence of proof of the proximate cause of the fire. When the proximate cause of an injury is left to speculation, the claim fails as a matter of law. *Sumsion v. Streator-Smith, Inc.,* 103 Utah 44, 132 P.2d 680 (1943).

Affirmed. Costs to respondent.

HALL, C.J., and OAKS and HOWE, JJ., concur.

DURHAM, J., does not participate herein.