E. C. KLINE, Appellee, v. SINTON TRANSFER COMPANY et al., Appellants.

No. 41747.

MARCH 7, 1933.

Burrows & Burrows, for appellants.

B. F. Jones and John P. Hornish, for appellee.

DONEGAN, J.—On or about the 17th day of October, 1923, certain furniture and household goods which plaintiff claims to own were left with the defendants for storage. These goods were stored on the first floor of a building, the second floor of which was occupied by another tenant. During the month of February, 1929, it was discovered that water had leaked down from the upper floor onto the furniture and household goods, and had formed ice, so that it was necessary to chop some of the furniture and goods out. The evidence of the defendants is that on discovering their condition they removed the furniture and goods to another building where they were wiped off and spread out to dry. The goods were later returned to the plaintiff. When thus returned, the plaintiff claims the furniture and goods were in a badly damaged condition, and this action was instituted to recover the damages which he claims to have sustained.

In his petition the plaintiff states in substance that the defendant company kept a warehouse at Keokuk, Iowa, and that on the 17th day of October, 1923, the defendants agreed to store safely and keep in said warehouse certain household goods belonging to the plaintiff, of the value of $386.45; that, while in said warehouse, the defendants negligently permitted said goods to became wet, whereby they were soiled, mildewed, and greatly injured to the damage of the plaintiff, in the sum of $386.45. Defendants in their answer deny the allegations of plaintiff's petition generally; specifically deny that the goods were stored by plaintiff; specifically deny that he was the owner of the goods; and specifically deny that defendants negligently permitted the goods to become wet, mildewed, or greatly injured. Defendants' answer further states that defendants exercised ordinary care in the storing of the goods, and that, if the goods were injured in any manner, such injury or loss occurred through the operation of forces not within the control of the defendants.

Plaintiff's petition also contained an allegation that "at the time said goods were delivered to the defendant the plaintiff informed him that it was necessary for their preservation that they should be kept dry"; the plaintiff argues that this constituted a special contract, by the terms of which the defendants agreed to keep the goods dry. Whether or not this statement by itself would constitute a special contract need not be determined, because the case was not tried on this theory. The case was tried in the district court upon the theory of defendants' negligence, and was submitted

to the jury on that theory in the court's instructions. For this reason the claim of special contract will not be given any further consideration in this opinion.

At the close of all the evidence, the defendants asked the court to direct a verdict for defendants, and, upon its refusal, asked for certain instructions and objected to certain other instructions given by the court. The cause was submitted to a jury which returned a verdict for plaintiff for $150. From this verdict and judgment thereon, defendants appeal.

 I. The first assignment of error has to do with the action of the trial court in overruling the defendants' motion for a directed verdict in favor of defendants. The grounds of defendants' motion to direct the verdict were that there was no evidence to show any negligence on the part of the defendants, that the evidence showed that the loss of the goods occurred through the operation of forces not within the control of the defendants, and that there was no evidence introduced by the plaintiff to either disprove that the loss was caused by snow on the roof, or to make it appear that a want of ordinary care on the part of the defendants co-operated with the destroying cause.

In this connection the defendants contend that the only action pleaded by the plaintiff was on account of negligence in permitting the stored property to *become wet,* and that the plaintiff cannot recover in this action on account of any claim of negligence in caring for the stored property after its wet or frozen condition was discovered. This theory, however, does not seem to have been followed in the trial of the case. The defendants in examination of their own witnesses introduced evidence as to the care taken of the goods after their condition was discovered, and further evidence of these witnesses along the same line was elicited on cross-examination without any objection on the part of the defendants. The court in its second instruction told the jury that the case was one of "care of goods left in charge of a bailee." At no place in the charge does the court limit the negligence claimed against the defendants to negligence in permitting the stored property to become wet; and at no time during the trial did the plaintiff ask the court that the negligence claimed against the defendants should be thus limited. The whole record seems to indicate that the case was tried on the theory of negligence in caring for the stored property *after* it was dis-

covered that it had become wet, as well as in permitting it to become wet.

The evidence as set out in the abstract and additional abstract shows that, at the time the goods were stored in the building in which they later became wet, the room on the first floor of this building in which they were stored was dry; that, before renting it, the defendant Talbott had gone through the building, had examined it, and found that it was dry, but that he made no examination of the roof and made no examination of the upper floor to see if there were water pipes there; that there were no water pipes running through the storage room to the upper floor; that the defendant Talbott had been told that the building was dry by the landlord; and that the defendants had no control over the portion of the building above the first floor. It further appears that, when water was discovered in the storage room, it was dripping from the ceiling above, and that some of the stored property was frozen in two or three inches of ice. Defendants' evidence tended to show that defendants wiped off the stored property and spread it out to dry, and that this was all that an ordinary person would have done under the circumstances. There was further evidence that some of the goods were stored in trunks and that these trunks were not opened and the contents allowed to dry out, and that, when the stored property was taken out of the ice in which it was frozen, it was in poor shape and practically worthless.

In view of the evidence that the defendants made no examination of the roof or upper floor, that the water was dripping from the upper floor, and had dripped in a sufficient quantity and accumulated to a sufficient depth to form ice two or three inches thick, out of which some of the stored property had to be chopped, that the stored property was in bad shape and practically worthless when chopped out of the ice, and that the goods in trunks were not spread out or dried, we are not prepared to say, as a matter of law, that there was no evidence on which the jury might find the defendants negligent. Leaving aside any question of negligence in failing to examine the upper floor and roof before storing the property upon the premises, we cannot say, as a matter of law, that water dripping from the upper floor in sufficient quantity to form ice two or three inches thick had not been dripping for a considerable length of time; nor can we say, as a matter of law, that, if the stored goods were practically worthless, when chopped out of the ice, they had

not been frozen in this ice for a considerable length of time. If this condition had existed for a sufficient length of time to bring about these conditions before the water and ice were discovered by the defendants, we cannot say, as a matter of law, that the defendants made sufficiently frequent examinations of the premises and of the stored property to negative any negligence on their part.

II. Defendants complain of the court's third instruction, which was as follows:

"Before the plaintiff can recover in this case, he must prove by a preponderance of the evidence:

"First: That the goods alleged in his petition were delivered to the defendants for storage and safekeeping.

"Second: That he paid for the said storage.

"Third: That the goods were in good condition when delivered to the defendants.

"Fourth: That they were damaged when they were returned to the plaintiff by the defendants.

"If you find that all of the above propositions have been established by a preponderance of the evidence, then you should find for the plaintiff. On the other hand, if you find that the plaintiff has failed to establish any one of the above propositions then the plaintiff cannot recover and your verdict should be for the defendants."

This instruction does not refer to any other part of the charge for any further qualification or explanation. It categorically directs the jury to find for the plaintiff, if they find that the goods were delivered to defendants for storage, that plaintiff paid for such storage, that the goods were in good condition when delivered to defendants, and that they were damaged when they were returned to plaintiff by the defendants.

In its second instruction the court told the jury in substance that a warehouseman would be liable for injury to goods caused by his failure to exercise such care as a reasonably careful owner of similar goods would exercise, but would not be liable, in the absence of an agreement to the contrary, for injury to goods which could not have been avoided by the exercise of such care; that a warehouseman is not an insurer of goods, but is charged with ordinary care, and that ordinary care is such care as an ordinarily prudent person would exercise over his own property under like circumstances. It seems quite apparent that the third instruction set out

above is inconsistent with the provisions of the second instruction to which we have just referred.

This third instruction was followed by the fourth instruction in which the jury was told that, if the defendants did not take the care of the goods that an ordinarily prudent man would exercise over his own property, then the plaintiff would be entitled to recover. Neither in this fourth instruction, nor in any other part of the charge, is any reference made to or qualification or explanation given in regard to Instruction 3, and at no place in the charge is the jury directly and specifically told that they should return a verdict in favor of the defendants, if the evidence failed to show that the damage to the stored property was caused by the defendants' negligence. In view of the absolute directions contained in the court's third instruction, and the failure to explain or qualify the propositions therein laid down in any other part of the charge, it seems quite apparent that the giving of this instruction constituted prejudicial error.

 III. Defendants also complain of the court's fourth instruction, wherein the following language was used:

"And if you find that the defendants did not take the care that an ordinarily prudent man would exercise over his own property, then the plaintiff would be entitled to recover of the defendants whatever damages occurred to the goods by reason of such failure to exercise such ordinary care."

Defendants claim that this instruction should have presented both sides of the case, and should have told the jury that, if the defendants did use ordinary care, they would not be liable. We are not prepared to hold that the failure to include the matters which defendants complain were omitted in the same instruction would of itself constitute error. Whether or not the omission of the matters complained of would constitute error would depend upon whether such matters were sufficiently explained in any other part of the charge.

 Defendants also complain that this instruction was erroneous in requiring the defendants to use the degree of care which an ordinarily prudent man would exercise over his own property, and contend that the correct rule is that the care required was that which ordinarily prudent warehousemen are accustomed to exercise in regard to similar goods under similar circumstances. Section 9681,

Codes 1924, 1927, and 1931, which is subdivision 21 of what is commonly known as the Warehouse Act, provides that:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

As this instruction, while not using the exact language, substantially states the provision of the statute which fixes the degree of care required of a warehouseman in this state, there was no error in this part of the instruction.

IV. The defendants further complain of the court's fifth instruction, wherein it states that:

"Where goods, when placed in the hands of the bailee are in good condition, and they are returned in a damaged state or not returned at all, in an action between a bailor against a bailee, the law will presume negligence on the part of the bailee and impose upon him the burden of showing that he exercised such care as was required by the bailment."

This instruction, so far as it goes, announces the law of many jurisdictions, including our own. In the case of Hunter v. Ricke Bros., 127 Iowa 108, reading at page 111, 102 N. W. 826, 827, we said:

"Now that a bailee who fails to account for property intrusted to him may be held liable in some form of action for the value thereof, is general doctrine. And it may be conceded that in the greater weight it is the rule of the cases that, where it appears the property bailed is injured, lost, or destroyed while in the exclusive possession of the bailee, the burden is upon him to overcome the presumption arising therefrom that such occurred through a want of ordinary care on his part." (Citing cases.)

We believe, however, that the brevity of the instruction complained of, without any further explanation, creates a grave danger that the law may not be fully understood by the jury. In the case of Hunter v. Ricke Bros., supra, we further said:

"And when the presumption which obtains contemporaneous with the injury or loss, and which, as in this case, is solely relied upon in chief, is overcome by a showing that such injury or loss occurred through the operation of forces not within the control of the bailee, the case must be at an end, unless he who complains shall go farther, and either disprove the asserted cause of loss, or make it appear that a want of ordinary care on the part of the bailee co-operated with such destroying cause."

We believe that some such additional explanation such as that above quoted should have been given to the jury in connection with this fifth instruction.

V. Other errors are assigned because of the court's refusal to give five separate instructions asked by the defendants. As the grounds of these alleged errors have been sufficiently discussed in connection with the instructions given by the court, we do not deem it necessary that they should be given further consideration.

For the reasons stated in the opinion, the judgment of the trial court will be reversed.—Reversed.

All Justices concur.