# OCTOBER, 1943.

LILLIAN BRASCH, RESPONDENT, v. SLOAN'S MOVING & STORAGE COMPANY, A CORPORATION, APPELLANT.—176 S. W. (2d) 58.

St. Louis Court of Appeals. Opinion filed December 7, 1943.

598

*Sievers & Reagan* for appellant.

*Kramer & Chused* for respondent.

BENNICK, C.—This is an action by plaintiff owner against defendant, Sloan's Moving & Storage Company, for the value of the contents of a certain carton of household possessions stored by plaintiff with defendant, which defendant allegedly failed to return to plaintiff on demand. Judgment was prayed for the sum of $309.56, which was alleged to be the value of the contents of the carton. Originating in a justice's court, the case went on appeal to the circuit court, wherein, upon a trial to a jury, a verdict was returned in favor of plaintiff, and against defendant, for the sum of $123.82. Judgment was rendered in accordance with the verdict; and defendant's appeal to this court has followed in the usual course.

The whole controversy on this appeal has to do with the validity of a condition inserted in the warehouse receipt purporting to limit the extent of defendant's liability "for each or any piece or package and the contents thereof" to $25. The question is presented in connection with the giving and refusal of instructions; and with its liability established by the verdict of the jury, defendant asks that the present judgment be reversed and the cause remanded with directions to the circuit court to render judgment for plaintiff for $25.

The evidence disclosed that on July 25, 1939, the plaintiff, Lillian Brasch, called defendant over the telephone and requested that it come to her apartment and pick up for storage "one room of furniture and some cartons". There was apparently no more specific identification of the articles to be stored, and no request by defendant for any information regarding the nature or value of the goods. In response to an inquiry about the cost, plaintiff was merely told that the storage charges would be about two dollars a month; "and that was the only conversation outside of when they would pick it up, which was the next morning." Nothing was said whatever about any limitation of defendant's liability; nor was there any further conversation before the goods were picked up on the following day and taken away for storage.

Upon receipt of the goods at its warehouse, defendant issued a nonnegotiable warehouse receipt, which was transmitted to plaintiff by registered mail, and was received by her on August 10, 1939, fifteen days after her possessions had been taken away. The receipt contained all the essential terms of a warehouse receipt, and in addition certain other conditions which were inserted by defendant, including the following condition in limitation of liability out of which the present controversy has arisen:

"Unless a greater value is stated herein, the depositor declares, that the value, in case of loss or damage, whether arising out of the storage, transportation, packing, unpacking or handling of the goods, and the liability of the Company for any cause for which it may be liable, for each or any piece or package and the contents thereof, does not exceed and is limited to twenty-five dollars, upon which declared or agreed value the rates are based. such depositor having been given the opportunity to declare a higher valuation, without limitation, in case of loss or damage from any cause which would make the Company liable and to pay the higher rates based thereon."

Plaintiff testified that when she received the warehouse receipt, she did not read it other than to glance over it to see that all her articles of property were included in the typewritten schedule of goods stored.

On September 1, 1942, after the goods had been in storage for slightly more than three years, plaintiff requested their redelivery; and upon her payment of all storage charges and surrender of the

warehouse receipt, defendant, on September 4th, undertook to make delivery at the address she had given.

Among the twenty-six pieces stored had been five cartons or cardboard boxes containing numerous small items, some of which, such as pots and pans and the like, were obviously of but little value. There was a large carton, however, which contained plaintiff's valuable linens and silverware; and this carton, unfortunately, was not returned or ever accounted for by defendant.

This action is to recover the reasonable value of the contents of such lost carton; and as already indicated, the legal question in the case is whether plaintiff is entitled to judgment for the reasonable value as ascertained by the jury, or whether, on the contrary, she is bound and concluded by the condition in the warehouse receipt limiting defendant's liability to a maximum of $25 for any one piece or package and the contents thereof.

The determination of this question involves the consideration of the following two sections of our Uniform Warehouse Receipts Act, the same being Sections 15501 and 15502, Revised Statutes Missouri 1939 (Mo. R. S. A., secs. 15501, 15502):

"Sec. 15501. Form of receipts—essential terms.

"Warehouse receipts need not be in any particular form, but every such receipt must embody within its written or printed terms—

"(a) The location of the warehouse where the goods are stored,

"(b) The date of issue of the receipt,

"(c) The consecutive number of the receipt,

"(d) A statement whether the goods received will be delivered to the bearer, to a specified person, or to a specified person or his order,

"(e) The rate of storage charges,

"(f) A description of the goods or of the packages containing them,

"(g) The signature of the warehouseman, which may be made by his authorized agent,

"(h) If the receipt is issued for goods of which the warehouseman is owner, either solely or jointly or in common with others, the fact of such ownership, and

"(i) A statement of the amount of advances made and of liabilities incurred for which the warehouseman claims a lien. If the precise amount of such advances made or of such liabilities incurred is, at the time of the issue of the receipt, unknown to the warehouseman or to his agent who issues it, a statement of the fact that advances have been made or liabilities incurred and the purpose thereof is sufficient. A warehouseman shall be liable to any person injured thereby, for all damage caused by the omission from a negotiable receipt of any of the terms herein required."

"Sec. 15502. Form of receipts—what terms may be inserted.

"A warehouseman may insert in a receipt, issued by him, any other terms and conditions; Provided, that such terms and conditions shall not—

"(a) Be contrary to the provisions of this article,

"(b) Nor in anywise impair his obligation to exercise that degree of care in the safe-keeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own."

In urging that plaintiff is bound by the limitation of liability inserted in the receipt, defendant argues that the Act became a part of the contract between the parties; and that since the Act makes provision for the terms and conditions which are to be embodied in a warehouse receipt, plaintiff is to be constructively charged with notice of all the terms and conditions of the particular receipt, including the condition limiting liability, notwithstanding the fact that she had no actual knowledge of such condition and had not expressly assented to it in her negotiations with defendant respecting the storage of her goods.

The fallacy of this line of reasoning is that in undertaking to impute contractual force and effect to all the terms and conditions of a warehouse receipt from the mere fact of their insertion in the instrument, no account is taken of the vital distinction between the terms and conditions which are made mandatory by Section 15501, and those additional terms and conditions which the warehouseman is not obliged to insert, but may be permitted to insert by virtue of Section 15502.

A mere reading of the two sections will at once disclose that while Section 15501 was obviously written for the mutual benefit of both the owner and the warehouseman, not so with Section 15502, which was mainly written for the benefit of the warehouseman alone so as to allow him to insert terms and conditions in the receipt other than those made obligatory by Section 15501.

When it is said that the Act becomes a part of the contract between the owner and the warehouseman, what is meant is that the agreement made between them must be deemed to have embodied all the various terms required by the Act as to which the parties are necessarily charged with knowledge. In other words, when the receipt is accepted, the parties are to be regarded as having mutually agreed to all the terms and conditions made mandatory by the Act; but as to terms and conditions not made mandatory by the Act and not inconsistent with its provisions, the parties are left free to contract as they wish, and an express meeting of the minds as to all such terms and conditions is no less essential than in any other character of contract. It follows, therefore, that as to the terms and conditions made mandatory by Section 15501, the owner, when he accepts his receipt, is constructively charged with knowledge of them since they are not alone for the advantage of the warehouseman, but inure to his own benefit as well; but as to terms and conditions not made mandatory by Section 15501, but which are merely permissive under Section 15502 which redounds primarily to the benefit of the warehouseman, the

owner is not charged with notice unless such terms and conditions are brought to his attention and he thereupon assents to them so as to make them a part of the contract between himself and the warehouseman. [Voyt v. Bekins Moving & Storage Co., 169 Ore. 30, 119 Pac. (2d) 586, adhered to on rehearing, 127 Pac. (2d) 360; Central Storage Warehouse Co. v. Pickering, 114 Ohio St. 83, 151 N. E. 42.]

In the case at bar, the condition purporting to limit defendant's liability was not an essential term which defendant was required to embody in the receipt under the provisions of Section 15501, but instead it was a condition of the sort which it was merely permitted to insert under the authority of Section 15502. If assented to by plaintiff, and assuming that it would in fact have been supported by a valuable consideration, the condition would not have been unlawful as tending to exempt defendant from liability for its negligence. While a warehouseman may not avoid his liability for negligence, he may nevertheless stipulate with the owner as to what the extent of the latter's recovery shall be, where the rate charged the owner is based upon an agreed valuation which is put upon the property. [Voyt v. Bekins Moving & Storage Co., *supra*.]

But even though the condition limiting defendant's liability might have been lawful if there had been a meeting of the minds upon it, the fact remains that since it was a condition which defendant was merely permitted, but not required, to insert in the receipt, plaintiff was neither to be charged with notice of it nor of assent to it from the mere fact of her retention of the receipt without objection. On the contrary, if the condition was to become a part of the contract, it was necessary that plaintiff's attention be called to it, and that she be advised that the rate to be charged was a reduced rate to be applied in consideration of her consent to the limitation of defendant's liability. Had this been done, and had she thereupon acquiesced in the condition either by express assent or by retention of the receipt without objection, the condition would now be binding and conclusive upon her; but inasmuch as it was not brought to her attention and there was no meeting of the minds upon it, she is not in anywise bound by the condition, and may recover the full value of the property which defendant failed to redeliver. The question of the rights and liabilities of the parties is to be determined from the agreement as entered into between plaintiff and defendant at the time the latter accepted the goods for storage; and since the contract was then complete, it was not to be subsequently altered or modified by the inclusion of an additional condition of which plaintiff was not apprised and to which she never assented. [Voyt v. Bekins Moving & Storage Co., *supra*; Williams v. Gallagher Transfer & Storage Co., 170 La. 461, 128 So. 277; State v. Ace Storage & Moving Co. (Mo. App.), 135 S. W. (2d) 363.]

Nor is the propriety of this conclusion affected by the fact that the Act makes it a criminal offense for a warehouseman to issue a receipt

before the goods for which the receipt is given have been actually received by him or are under his control. [Sec. 15548, R. S. Mo. 1939 (Mo. R. S. A., sec. 15548).] The receipt which is issued serves a dual purpose; and while it evidences the contract between the parties, it is none the less a receipt in the ordinary sense of the term, and as such must be expected to speak the truth regarding the existence of the property covered by it. The obvious purpose to be served by making it an offense to issue a receipt unless the goods are actually under the warehouseman's care and control is to prevent the issuance of false and fraudulent receipts with all the attendant harmful consequences. It is apparent, therefore, that the particular section has only to do with the issuance of the instrument in its character as a receipt, and in no sense abrogates the fundamental principle that in so far as it evidences a contract between the parties, the owner is not to be bound by nonessential terms and conditions upon which the minds of the parties have never met.

As a matter of fact, in its application to the law of contracts, the case at bar falls in the same general category as the familiar check room cases, where it is held that one operating a parcel check room may not limit his liability for a parcel checked with him by the delivery of a claim check containing a provision for limited liability, unless such provision is called to the attention of the owner of the parcel, and is assented to by him. [Brown v. Hines, 213 Mo. App. 298, 249 S. W. 683.] It may be conceded that in such a case, as distinguished from the storage of goods in a warehouse, the parcel is usually checked without any negotiation with the bailee, and that because of the temporary nature of the transaction, the owner of the parcel may have the greater reason for assuming that the claim check he received is intended as nothing more than a token or means for identifying his property when he calls for it. But save for this distinction, which goes only to the extent to which the particular circumstances might be expected to bring home to the owner of the property that he was being offered a special contract, the legal aspects of the two situations are otherwise identical, so that whether the provision for limited liability is contained in an ordinary claim check or in a warehouse receipt, it can in neither event become effective without obtaining the owner's consent.

It is very understandable why defendant might have desired to limit its liability in the case of such valuable items as linens and silverware, but with such a purpose in view, it should have called the matter to plaintiff's attention, and have advised her that the rate it had quoted was a reduced rate to be charged in consideration of her consent to a provision for limited liability, with a correspondingly higher rate to be charged if she insisted upon a higher valuation. However, there is no pretense that this was ever done; and defendant's liability was therefore properly measured by the reasonable value

of the goods which it failed to redeliver at the termination of the bailment.

It follows that the judgment rendered by the circuit court should be affirmed; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.