[Civ. No. 3928.   Fourth Dist.   Aug. 26, 1948.]

HERRMANN G. PAGE et al., Appellants, v. ACE VAN AND STORAGE COMPANY (a Corporation) et al., Respondents.

Garfield & Garfield for Appellants.

Ruel Liggett for Respondents.

BARNARD, P. J.—The plaintiffs sued to recover the value of four rugs stored by Mrs. Page in the defendants' warehouse.

In November, 1944, defendants' driver picked up these rugs at plaintiffs' home. At this time Mrs. Page signed two instruments, copies of which were given to her. The first is a ''work order'' containing a number of descriptive blank spaces, a few of which are filled in. Near the top of the in-

strument, conspicuously enclosed in a box and in clear type, appears the following:

"Unless a greater value is stated herein in writing the depositor declares that the value, in case of loss, or damage, whether arising out of the storage, transportation, packing, unpacking, or handling of the goods, and the liability of this Company for any cause for which it may be liable, for each or any piece or package or the contents thereof, does not exceed and is limited to 10c per pound, and a maximum value of $25.00 for any one piece or package upon which declared or agreed value the rates are based, such depositor having been given the opportunity to declare a higher valuation without limitation, in case of loss or damage from any cause which would make the Company liable and to pay the higher rates based thereon."

This is followed by a certificate that the undersigned agrees to the above and has authority to act, with a line for the signature of the "shipper." This was signed by Mrs. Page. The other document, called an "inventory," contains at the top the shipper's name and address, etc., and then four entries, each reading "Oriental rug," with its size and the word "used." Eight inches below those entries, and being the only other thing on the document, appears the same language as that above quoted, with the same certificate of agreement and authority and a line for the signature of the owner. This was also signed by Mrs. Page. In the middle of the 8-inch blank space someone has written in pencil the word "vault."

A day or two later, Mrs. Page went to the defendants' office where she signed and was given a copy of a third document labeled "Warehouse Receipt and Contract," which was also signed by the defendants. This document acknowledged receipt of these four "used" oriental rugs and set forth 10 short paragraphs, containing less than half a page, stating the agreements between the parties. The second and longest of these paragraphs is as follows:

"It is agreed that the storage rate charged is based upon the value of the goods, plus the space occupied, and for the purpose of fixing such rate the depositor hereby expressly represents and warrants that the value of such goods, in case of loss or damage, whether arising out of storage, transportation, packing, unpacking or handling of the goods, and the liability of this Company for any cause for which it may be liable for each or any piece or package or the contents thereof,

does not exceed and is limited to 10c per pound and a maximum value of $25.00 for any one piece or package, upon which declared or agreed value the rates are based, such depositor having been given the opportunity to declare a higher valuation without limitation, in case of loss or damage from any cause which would make the Company liable and to pay the higher rates based thereon. The Company shall only be liable for failure to use ordinary care and then only upon the basis of the above agreed valuation of said goods.''

The eighth paragraph reads: ''No person is authorized to make any other agreement or condition on behalf of the Company.'' Below, in a blank marked ''Section,'' appears the word ''vault'' written in ink.

Mrs. Page demanded the rugs in April, 1946, at which time they could not be found. Sometime prior to that date, the defendants' warehouse had been broken into and a number of things stolen and it is supposed that these rugs were among the articles taken. The fact that these rugs were missing was not ascertained until demand for them was made.

The complaint in this action set up two counts, one for conversion and one for negligence. The defendants admitted the storage and failure to redeliver, failed to deny negligence, denied the amount of the damage, and pleaded the contractual provision with respect to the value of the property.

Mrs. Page testified that when the driver came to get the rugs he admired them, that ''I admitted they were pretty nice and that I valued them pretty highly,'' that she did not discuss with the driver the value of the rugs in dollars and cents, and that nothing was said about the value when she went to the office a day or two later. She also testified that she asked for the best type of storage available; that they assured her the vault was safe and the best they had; that she said she wanted them in a vault and not hanging; that they said they rolled rugs in moth-proofed paper and placed them in a vault; that ''My idea of a vault was a big vault like they put silverware and such as that in''; and that ''I assumed that it was a regular steel vault.'' The defendant Carlstrom, owner of the business, testified that they had what is called a rug vault, in which all rugs were placed; that this was a separate room with sliding doors, containing pigeon holes about 2 feet in diameter by 15 feet in depth; that this was a rug vault; and that it was always referred to as a vault.

The court, sitting without a jury, found that the reasonable value of these rugs was $2,180; that they were not placed

in a vault but were placed in a rug compartment in this warehouse; that negligence was admitted by the answer; and that at the time of storing these goods Mrs. Page had signed the storage receipt and contract on which was plainly printed the agreement first above quoted. As conclusions of law, it was found that the plaintiffs were entitled to judgment in accordance with the value set forth in these contracts, together with the amounts of storage paid by the plaintiffs. From the judgment so entered, the plaintiffs have appealed.

The appellants contend that the court erred in limiting their recovery to the value set forth in the warehouse receipt and contract and the two other instruments, since the respondents breached their agreement by failing to store their rugs in a vault, since they were negligent, and since they knew the nature of these rugs and should have realized their value. While the evidence with respect to storage in a vault is not too convincing it must be assumed for the purposes of this appeal that the respondents breached their agreement and were also guilty of negligence. Their liability is conceded and the sole question presented is whether the court was justified in measuring the extent of that liability by the contract of the parties or whether it must be held, as a matter of law, that the contract improperly attempted to limit the liability of the respondents. As we view the matter, the question was one of fact for the trial court. While Mrs. Page told the driver that she valued the rugs highly no amount was then named, and nothing was said when she called at the office. While these rugs were listed as oriental rugs it is a well-known fact that there is a very wide range in the value of rugs which are commonly thus designated. Notwithstanding this fact, Mrs. Page named no higher valuation and secured a lower rate of storage by expressly declaring in three instruments that the value did not exceed the amount named therein. This declared value and agreement to abide thereby in case of loss were not only plainly printed, as found by the court, but they appear on the instruments, the originals of which are before us, to be conspicuously set forth and in two of them they are the only things which Mrs. Page signed.

Section 3 of the Warehouse Receipts Act (Stats. 1909, p. 437; 3 Deering's Gen. Laws, Act 9059) provides that a warehouseman may insert in a receipt any terms and conditions provided they are not contrary to the act and that they do not impair his obligation to exercise such care as a reason-

ably careful man would exercise in regard to similar goods of his own. Not only does the value of goods have a relation to the degree of care which a reasonable man gives to his own goods, but it was here expressly stated that it was being used as a basis for the fixing of charges. The validity of a contract for this purpose is well recognized in transportation cases, especially where the shipper has an opportunity to secure greater coverage by paying a higher rate. (*Franklin* v. *Southern Pac. Co.*, 203 Cal. 680 [265 P. 936, 59 A.L.R. 118]; *Donlon Bros.* v. *Southern Pacific Co.*, 151 Cal. 763 [91 P. 603, 12 Ann.Cas 1118, 11 L.R.A.N.S. 811].) In the latter case it was held that a contract fixing an agreed valuation on the property was one for the purpose of fixing transportation charges and of measuring the responsibility of the carrier in case of loss, and that it was not a contract limiting liability within the meaning of a statute forbidding such an agreement. This reasoning and construction was applied to a warehouse case in *McMullin* v. *Lyon Fireproof Storage Co.*, 74 Cal.App. 87 [239 P. 422].

The appellants rely particularly on *England* v. *Lyon Fireproof Storage Co.*, 94 Cal.App. 562 [271 P. 532] and *Wilson* v. *Crown Transfer etc. Co.*, 201 Cal. 701 [258 P. 596]. Those cases, while involving somewhat different facts, recognize the principles to which we have referred. While there is some language in the England case which supports appellants' contention the essential question was there treated as one of fact rather than one of law. In that case, the court set aside the portion of the judgment covering certain household goods, the value of which was not made known to the defendant, and upheld the portion covering the value of certain liquor, which was later delivered, on the ground that the evidence sufficiently supported the fact that its value was made known. It was also held that the court properly refused to give an instruction to the effect that a limitation of value placed in the first warehouse receipt applied to and was controlling with reference to the boxes containing the whiskey.

In the Wilson case the court affirmed a judgment in favor of the plaintiff, distinguishing that case on the facts from a former case in which a limitation on the amount of liability had been upheld for the reason that notice of the limitation was plainly printed on the face of the receipt, which was extremely brief, and that the owner of the goods had presumptively read it and was bound by it. In the Wilson

case it was pointed out that different facts there appeared; that the notice of limitation of value in the receipt was in small type and merely a part of a large amount of printed matter; that there was evidence that the defendant was notified of the true value of the goods at the time they were left for storage, and at least on one occasion thereafter; that no demand was ever made for any increased rate of storage; that no receipt was given to the owner until 18 months after the goods were stored; and that it was not error for the court to refuse to instruct the jury that the owners were conclusively presumed to know the contents of the warehouse receipt, and that their right to recover was conclusively controlled by its provisions.

Both of the cases thus relied on treat the question which is controlling here as one of fact and we find nothing in those cases to support the contention here made that it must be held, as a matter of law, that the valuation thus agreed on in the three instruments was not controlling or that the evidence here is entirely insufficient to support the court's finding that the value of these rugs was agreed upon, with the implied finding that the agreement was fairly entered into. The question was one of fact and the evidence is sufficient to support the findings made.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.