82 So.2d 909

### Mrs. Will HOGAN

v.

### Robert G. ALLISON (Allison Coal Transfer Warehouse) et al.

### 6 Div. 416.

Supreme Court of Alabama.

May 26, 1955.

Rehearing Denied Nov. 3, 1955.

452

Taylor, Higgins, Windham & Perdue
and Wade H. Morton, Birmingham, for
appellant.

Jos. S. Mead, Birmingham, for appellee Allison.

London & Yancey, Jas. E. Clark, Birmingham, for appellee Maryland Cas. Co.

GOODWYN, Justice.

This is an action under the Uniform Warehouse Receipts Act, Code 1940, Tit. 2, §§ 504–567, brought by appellant against appellees Robert G. Allison, doing business as Allison Coal Transfer Warehouse, and Maryland Casualty Company, a corporation, as surety on Allison's public warehouseman's bond, to recover for the loss of certain household goods, personal property and effects stored by appellant with appellee Allison, as warehouseman, and which were not returned to appellant by appellee Allison upon demand made therefor.

The original complaint charged that the stored property was destroyed by fire through Allison's "lack of ordinary care and diligence." As last amended, the complaint presents an action ex contractu in one count which alleges, in substance, the following: That on December 27, 1949, Allison was engaged in the business of storing household goods, personal property and effects as a public warehouseman for a reward in Birmingham, Alabama; that on that date appellee Maryland Casualty Company was surety on Allison's bond as such public warehouseman; that on October 31, 1946, appellant stored with Allison, as such public warehouseman, certain household goods, personal property and effects, naming them; that upon delivery of the property to Allison he issued and delivered to appellant a warehouse receipt therefor; that appellant paid Allison the storage charges required and demanded for said storage; that on December 29, 1950, appellant made demand on Allison for return of the property and at that time offered to surrender the warehouse receipt and to acknowledge receipt of the property upon delivery of it to her; that Allison failed to deliver the property in compliance with said demand and that appellant claims of appellees $1,500, with interest, as damages for breach of the duty owed by Allison, as such public warehouseman, to appellant.

Appellees filed separate demurrers to the amended complaint. These demurrers being overruled, appellees then interposed 7 pleas.

Pleas 1 and 2 are pleas of the general issue.

In plea 3 it is averred that the claimed loss and damage "were the proximate consequence of a fire, which said fire occurred prior to the alleged demand of the plaintiff on the defendant Allison for her property, and the plaintiff was notified by the defendant Allison that the said fire had damaged and destroyed her said property."

Plea 4 is the same as plea 3 except that the fire is alleged to have occurred on December 27, 1949, and that the cause or origin of said fire is unknown to the defendants.

Pleas 5, 6 and 7 specifically deny liability and aver that, if there is liability, plaintiff cannot be awarded any damage in excess of $50 for any article, piece or package of said goods stored with the defendant Allison because, prior to the storage of said goods, plaintiff and defendant Allison, for a valuable consideration, entered into a contract in writing, designated "Warehouse Receipt and Contract", in which it is provided as follows:

"The owner of the goods declares the value in case of loss or damage for each or any piece or package and the contents thereof does not exceed $50.00.

"The owner has the option of paying a higher rate, without limitation as to value, in case of loss or damage from causes which would make the Company liable, but agrees to specified valuation named, in case of loss or damage from causes which would make the Company liable, because of the lower rate thereby accorded.

"The depositor declares that the value of any article, piece or package, including the contents thereof, packed, handled, drayed or stored in this lot, or later received for the account of same depositor, does not exceed the sum of $50.00, on which valuation the rate shown above has been paid. The liability of the Company for any other cases than those hereinabove specified in Section 1, which would make it liable in case of loss or damage for goods or in its possession shall not exceed the sum hereinbefore declared, unless the owner representative fixes a greater value and agrees to pay an additional charge of $\frac{1}{4}$ of 1% per month thereon."

It is further averred that "the plaintiff entered into said stipulation with the defendant warehouseman Allison without fixing a greater value than $50.00 on any article, piece or package stored with the defendant warehouseman Allison, and

without agreeing to pay an additional charge of one-fourth of one per cent. per month thereon."

Appellant demurred to pleas 3 through 7. These demurrers being overruled, appellant moved for a non-suit, which was granted. This appeal is from the judgment of non-suit and presents for review the trial court's action in overruling the demurrers to pleas 3 through 7.

There are two questions presented, viz.:

I. Whether in an action to recover on a contract of bailment under the Uniform Warehouse Receipts Act a warehouseman has the burden of acquitting himself of negligence in showing lawful excuse for the failure to deliver property stored by a bailor upon legal demand therefor by the bailor when the property bailed has been destroyed by fire during the bailment.

II. Whether a public warehouseman may, by contract of bailment under the Uniform Warehouse Receipts Act, limit his liability with respect to loss of property deposited with him.

### I.

Prior to adoption of the Uniform Warehouse Receipts Act, Gen.Acts 1915, p. 661; Code 1940, Tit. 2, §§ 504–567, supra, it was well established in this state that in a suit by a bailor against a bailee, where the bailee failed, on demand, to deliver to the bailor goods intrusted to him, or did not account for the failure to deliver, *prima facie,* negligence was imputed to him, and the burden of proving a loss without the want of ordinary care devolved upon the bailee. Southern Railway Company v. Aldredge & Shelton, 142 Ala. 368, 371, 38 So. 805, 806; First Nat. Bank of Birmingham v. First Nat. Bank of Newport, 116 Ala. 520, 537, 22 So. 976; Davis & Son v. Hurt, 114 Ala. 146, 149, 21 So. 468; Prince v. Alabama State Fair, 106 Ala. 340, 346–347, 17 So. 449, 28 L.R.A. 716; Seals v. Edmondson, 71 Ala. 509, 512–513; Bricken v. Sikes, 14 Ala.App. 187, 189, 68 So. 801. But, where the bailee explained his failure to deliver on demand and showed that the goods were lost by a cause not involving him in liability, as by fire, theft, or violence of nature, the imputed negligence was rebutted. Seals v. Edmondson, supra; Bricken v. Sikes, supra.

And that rule, with respect to ordinary bailments, has been approved in later cases. Aircraft Sales & Service v. Bramlett, 254 Ala. 588, 592, 49 So.2d 144; Lewis v. Ebersole, 244 Ala. 200, 206, 12 So.2d 543. It is on these cases that appellees place principal reliance and assert in brief that "this appeal is an attempt to avoid the rule" applied in those cases. We do not think the rule of those cases is controlling here. In the instant case we are dealing with rights, duties and liabilities under the Uniform Warehouse Receipts Act, supra, and not with ordinary bailments which were involved in the cited cases. As we see it, the point to be decided, which will be determinative of the first question, is whether the Uniform Act has had the effect of making the stated rule inapplicable to bailments under the Act. We do not find that this precise question has been passed on by this court.

Bearing on the question are two sections of the Uniform Warehouse Receipts Act, Code 1940, Tit. 2, §§ 511, 526, §§ 8 and 21, respectively, of the Uniform Act, 3 U.L.A., pp. 18, 19, 35. These sections are as follows:

"§ 511 [§ 8 of Uniform Act]. Duty to deliver goods.—A warehouseman, in the absence of some lawful excuse provided by this article, is bound to deliver the goods upon a demand made either by the holder of a receipt for the goods or by the depositor, if such demand is accompanied with: An offer to satisfy the warehouseman's lien; an offer to surrender the receipt, if negotiable, with such indorsements as would be necessary for the negotiation of the receipt; and a readiness and willingness to sign, when the goods are delivered, an acknowledgement that they have been delivered, if such signature is requested by the warehouseman. In case the warehouseman re-

fuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

"§ 526 [§ 21 of Uniform Act]. Injury or loss resulting from negligence. —A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

Statutory provisions similar to these, patterned after Sections 8 and 21 of the Uniform Act, have been adopted by all of our sister states. 3 U.L.A., 1953 Pocket Part, p. 6. But, an examination of the cases dealing with the question here before us discloses that the decisions are in conflict. See 56 Am.Jur., Warehouses, §§ 268, 269, pp. 442–444; Annotation 13 A.L.R.2d 681; 67 C.J., Warehousemen and Safe Depositaries, §§ 261, 263, pp. 571, 572, 573, 574.

This conflict is thus recognized in the following from 56 Am.Jur., Warehouses, § 268, p. 443, supra:

" * * * According to some authority, the warehouseman fulfils his duty by showing a loss of the goods through fire, and the burden is then on the owner of the goods to show negligence of the warehouseman, and that such negligence was a proximate cause of the loss. * * * Other authorities take the view that the burden is upon the warehouseman of showing not only the loss through fire, but also his freedom from negligence. The latter rule has been regarded as particularly proper under a statute providing that in case a warehouseman refuses or fails to deliver goods on demand, the burden is on the warehouseman to establish the existence of a lawful excuse for such refusal or failure, but such statutory provision is not regarded in all cases as changing the rule, placing the burden of proof of negligence on the depositor or owner of goods where it appears that the goods were injured or destroyed by fire."

From 67 C.J., § 261, pp. 571, 572, supra, is the following:

"There is a difference of opinion as to whether the Uniform Warehouse Receipts Act changes the common-law rule relating to the burden of proof in actions by bailors against warehousemen. In some jurisdictions it is expressly held that the rule is not affected by the statute, and that the common-law principles relating to burden of proof are still controlling. * * * To the contrary, it is held in some jurisdictions that the statute changes the common-law rule, in respect of the burden of proof, and shifts it to defendant. The statute, it was said, requires more than a mere showing that the failure to deliver was due to an event which might or might not have been caused by his negligence, and that, to meet the burden imposed by the statute, the warehouseman must show that he exercised that degree of care which is required by it. * * * "

To undertake a discussion of the authorities on both sides of the question would unduly and unnecessarily extend this opinion. Suffice it to say, that we have given careful study and consideration to both lines of cases and are at the conclusion that the plain and unambiguous language of the Uniform Warehouse Receipts Act has the effect of placing the burden on the warehouseman to show not only the reason for not redelivering the goods deposited with him, but also that such reason was not the result of negligence attributable to him.

The position taken by appellees is that the enactment of the Uniform Warehouse Receipts Act did not have the effect of

changing the pre-existing common-law rule in Alabama with respect to the burden on the warehouseman of acquitting himself of responsibility for the loss of goods deposited with him when such loss is due to a fire; that the term "lawful excuse" as used in Section 511 means such lawful excuse as existed under the laws of Alabama at the time of the adoption of the Uniform Act; and that, therefore, when the warehouseman shows that the loss was due to a fire he thereby meets the burden placed on him by Section 511 of establishing the existence of a "lawful excuse" for his refusal or failure to deliver the goods to the depositor.

■■■ The Uniform Act does not deal with ordinary bailments but with warehouse receipts, provision there being made for the issuance of negotiable as well as non-negotiable receipts. Clearly, it seems to us, where a warehouseman issues a receipt *pursuant to the Act* he assumes a position different from that of an ordinary bailee for hire. Section 511 specifically provides that "A warehouseman, in the absence of some lawful excuse *provided by this article,* is *bound* to deliver the goods" when proper demand is made therefor; and Section 511, as if to make certain what was intended by this, further provides that in case of refusal or failure to deliver the goods "the *burden* shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal." The lawful excuse "provided by this article," which is referable to this case, is that contained in Section 526. It is there provided that a warehouseman "shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise" of "such care in regard to them as a reasonably careful owner of similar goods would exercise". That is to say he is liable for negligence. Of course, in the usual action based on negligence an essential element to be charged and proved by the plaintiff is the defendant's negligence. And the burden of so charging and proving is on the plaintiff. But that is not this case. Here, the action is not based on negligence but on the warehouse receipt contract. To state it simply, the situation is this: Plaintiff deposits goods with defendant warehouseman and is issued a warehouse receipt therefor. He makes the required demand for delivery of the goods. The warehouseman refuses or fails to make delivery. Suit is then brought to recover for loss of the goods based on the warehouse receipt and without charging the warehouseman with negligence. The warehouseman says he is not liable because the goods were destroyed by fire. Query: To entitle plaintiff to recover must he prove that the fire resulted from defendant's negligence or must the defendant, in order to acquit himself of liability, prove that the fire was not due to his negligence? It seems clear to us that the plain language of Section 511, especially when considered in connection with Section 526, places on the defendant the duty of affirmatively showing absence of negligence on his part. "A warehouseman * * * is *bound* to deliver the goods upon a demand made * * * for the goods" and "the *burden* shall be upon the warehouseman to *establish* the existence of a lawful excuse" for refusal or failure to deliver the goods. The duty to deliver the goods on demand is firmly fixed—the warehouseman is *bound* to make delivery. It is a violation of this statutory duty, read into the contract embraced in the warehouse receipt, which gives rise to a cause of action on said contract. If the warehouseman cannot make delivery, as he is *bound* to do, the *burden* is then specifically placed on him to *establish* the existence of a lawful excuse "provided by this article," that is, the Uniform Act. That excuse, it seems to us, is provided by Section 526—"he shall not be liable * * * for any loss * * * which could not have been avoided by the exercise" of such care in regard to the goods "as a reasonably careful owner of similar goods would exercise". Were it not for the clearly intended provisions of Section 511 placing the burden on the warehouseman, it might with some force be argued that Section 526 does no more than prescribe negligence

as the basis for a warehouseman's liability, thus placing the burden on the depositor of goods of charging and proving the warehouseman's negligence. But Section 526 is in pari materia with Section 511 and must be construed in connection with that section and the other provisions of the Uniform Act.

Among the cases from other jurisdictions in accord with our conclusion are the following: Caldwell v. Skinner, 1917, 100 Kan. 567, 164 P. 1166; Rudy v. Quincy Market Cold Storage & Warehouse Co., 1924, 249 Mass. 492, 144 N.E. 286; Federal Compress & Warehouse Co. v. Coleman, 1926, 143 Miss. 620, 109 So. 20; Traders' Compress Co. v. Precure, 1929, 140 Okl. 40, 282 P. 165, 71 A.L.R. 759, former appeal 107 Okl. 191, 231 P. 516; New Jersey Mfrs.' Ass'n Fire Ins. Co. v. Galowitz, 1930, 106 N.J.L. 493, 150 A. 408; Alabam's Freight Co. v. Jiminez, 1932, 40 Ariz. 18, 9 P.2d 194; Kline v. Sinton Transfer Co., 1933, 215 Iowa 943, 247 N.W. 215; Price & Pierce v. Jarka Great Lakes Corp., D.C.Mich.1941, 37 F.Supp. 939 (involving Michigan Uniform Act); Hanlon v. J. E. Miller Transfer & Storage Co., 1948, 149 Ohio St. 387, 79 N.E.2d 220; Denning Warehouse Co. v. Widener, 10 Cir., 1949, 172 F.2d 910, 13 A.L.R.2d 669 (involving New Mexico Uniform Act); George v. Bekins Van & Storage Co., 1949, 33 Cal.2d 834, 205 P.2d 1037; Colgin v. Security Storage & Van Co., 1950, 208 La. 173, 23 So.2d 36, 160 A.L.R. 1107; Hanson v. Wells Van & Storage Co., 1950, 100 Cal.App.2d 332, 223 P.2d 509; Arkwright Mills v. Clearwater Mfg. Co., 1950, 217 S.C. 530, 61 S.E.2d 165; Cody v. Miller, 1952, 91 Ohio App. 36, 102 N.E.2d 727, appeal dismissed 156 Ohio St. 246, 102 N.E.2d 19; Gutknecht v. Wagner Bros. Moving & Storage Co., Mo.App.1954, 266 S.W.2d 19; Cole v. Younger, 1954, 58 N.M. 211, 269 P.2d 1096.

In Caldwell v. Skinner, supra [100 Kan. 567, 164 P. 1167], the Supreme Court of Kansas, in resolving a question similar to that here presented, had this to say:

"It is insisted by the defendants that it was enough for them to allege the destruction of the goods by fire while they were stored in their warehouse, and that it was unnecessary to allege that the fire and consequent loss was without fault on their part. It is argued that negligence is not presumed, and when it was shown that the goods were destroyed by fire, the burden was then upon the plaintiffs to show that the fire was due to the negligence of the warehousemen. Cases are cited by defendants which tend to sustain their view, and there is a conflict of authority on the question, but the Legislature has provided a different rule for establishing claims of this character. In the act relating to warehouses it is provided that, in the absence of lawful excuse, the warehouseman upon demand must deliver the goods, upon the payment of the warehouseman's lien, a surrender of the warehouseman's receipt, and an acknowledgment of the delivery. * * *

*    *    *    *    *    *

"Under the statute, if it be shown that goods were delivered to the warehouseman in good condition and destroyed, lost, or returned in a damaged condition, it then devolves upon him to acquit himself of negligence; that is, to show a lawful excuse for his failure or refusal to deliver the goods in compliance with the demand. Doubtless the Legislature considered that the warehouseman who had control of the premises and the goods intrusted to his care was better situated than the depositor to know the facts and circumstances under which the destruction, loss, or damage occurred, and is best able to prove them."

We quote the following from the opinion of the Supreme Court of Oklahoma in Traders' Compress Co. v. Precure, supra [140 Okl. 40, 282 P. 166], where a provision of the Uniform Act similar to our Section 511 was being considered:

"Prior to and independent of the adoption of the Uniform Warehouse

Receipts Act (Comp.St.1921, § 11123 et seq.), which became effective in this state on June 22, 1915, the cases in this state dealing with bailments generally held that, where property was destroyed or lost while in the possession of the bailee and the bailor sought to recover, the court held that the burden was upon the plaintiff to maintain his action, and that such burden continued throughout the case. * * *

* * * * * *

"'We are not in accord with the views of those courts holding that where recovery is sought, based on the negligence of the warehouseman, the statute has changed the rule as to the burden of proof, for the reason that the statute under consideration deals only with the rights, duties, and liabilities of the parties under the contract of bailment as embodied in the warehouse receipt. The act does not deal with the burden of proof in actions sounding in tort, or with the law of negligence, and nowhere evinces an intention on the part of .the Legislature to in any manner modify the rules at common law in cases founded on negligence.

" 'Under the statute, the warehouseman is made liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he is not rendered liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of reasonable care, and if he fails or refuses to deliver the goods in compliance with a proper demand by the depositor or holder of the warehouse receipt, the burden is upon him to establish the existence of a lawful excuse for such failure or refusal.

" 'This statutory provision works no radical change either in the law or procedure. The universal rule is, that if one be sued on a contract of any character executed by him, he must,. in order to avoid liability, show a lawful excuse for his failure to perform. This is an affirmative defense, the burden of proving which is cast upon him, and the statute does no more than provide what shall constitute this affirmative defense in actions within its purview. Hence, if an action be brought by the owner against a warehouseman upon the contract of bailment for the recovery of stored goods. or their value, the warehouseman must excuse his failure to comply with the: contract; this he may do by showing: that the goods were lost and that the· loss was due to causes consistent with due care on his part. This has been held to be the rule irrespective of statute. 6 C.J. 1158. In such case, where the plaintiff has proven the bailment, a tender of all charges, a demand for the goods, and the warehouseman's failure or refusal to return, a prima facie case has been made out, and it is then incumbent upon the warehouseman to overcome this prima facie case by showing that the goods have been lost, and that he exercised due care to prevent such loss.

" 'On the other hand, if the holder of the receipt or depositor elects to, found his cause of action upon the· negligence of the warehouseman, instead of upon the contract of bailment,. he must recover, if at all, upon proof of negligence as alleged.'

"We interpret the above language to mean just what it says; that is, if the bailor sues the warehouseman in tort and alleges the warehouseman was; negligent or at fault in the loss and destruction of the goods, the bailor· must sustain his case throughout by the burden of proof. On the other· hand, if the bailor sues on contract,. alleging the delivery of the goods to the warehouseman, thereafter makes a. lawful demand for the return of the goods, and the warehouseman refuses,

or fails to return the said goods, the warehouseman must then, in order to legally excuse himself, show that the said goods were lost or destroyed without his fault or negligence."

In Alabam's Freight Co. v. Jiminez, supra [40 Ariz. 18, 9 P.2d 195], the Supreme Court of Arizona, in construing sections of the Uniform Act corresponding to our Sections 511 and 526, quoted with approval from the Traders' Compress Co. case, supra, and further said:

"The question is one of first impression in this jurisdiction, and after considering all of the authorities and the reasoning of the cases, we are of the opinion that the rule so clearly enunciated in the late case of Traders' Compress Co. v. Precure, 140 Okl. 40, 282 P. 165, 167, 71 A.L.R. 759, is the better sustained by reason. * * *

"The facts surrounding the loss of stored goods, and particularly the precautions necessary to prevent loss, are almost invariably either known to the warehouseman or can easily be ascertained by him. On the other hand, the owner of property frequently, and indeed generally, does not and cannot know these facts without great effort, if at all, and to impose on him the burden of determining just what precautions should be and have been taken is to impose on him an almost impossible task, and make him in effect at the mercy of the warehouseman. The warehouseman might be guilty of the grossest negligence, and yet, because of his possession of the goods, and the usual character of his business, it would be almost impossible for the owner to show negligence, while on the other hand the former, if he has exercised proper care, can in most cases show the fact without difficulty. * * *

"We hold, therefore, that when suit is brought against a warehouseman on his contract of bailment, and a defense is made that the goods have been destroyed, the burden of proof is on him to show, not merely the destruction of the goods, but that they were destroyed under circumstances which show that he was using such care in regard to them as a reasonably careful owner of similar goods would exercise. * * *"

Also, from Price & Pierce v. Jarka Great Lakes Corp., supra [37 F.Supp. 946], where the U. S. District Court construed sections of the Michigan Uniform Warehouse Receipts Act similar to our Sections 511 and 526, is the following:

"While the authorities on this issue are in conflict, the court is of opinion that, in actions based on contract where the negligence of the warehouseman is no part of plaintiff's case but constitutes an affirmative defense under the pleadings, the sections above quoted place upon the warehouseman the burden to establish the existence of a lawful excuse for his refusal to deliver, and that in order to establish such lawful excuse the warehouseman must show that he was free from negligence."

In Gutknecht v. Wagner Bros. Moving & Storage Co., supra [266 S.W.2d 23], the Missouri Court had under consideration sections of the Uniform Act corresponding to our Sections 511 and 526 and there said:

"[W]here one seeks recovery based on negligence, he must, as in other negligence actions, plead and prove that the negligence of the warehouseman caused the loss, for the statute does not alter this rule.

"On the question of the liability of the warehouseman on his contract under the statute, it is his duty to return the goods to the bailor when properly demanded. This is a part of his contract and when he fails or refuses to do so, he must excuse his nonperformance. Section 406.090 places upon the warehouseman the burden of showing that in the exercise of the care required of him he is unable to deliver the bailed goods.

"Thus, where recovery is sought on the contract of bailment, all that the plaintiff need plead and prove are the facts of the bailment, his compliance with the contract, and the failure or refusal of the warehouseman to deliver the bailed goods to him upon demand. It then falls upon the warehouseman to plead and prove that he exercised the care required of him by the statute and that the loss was not due to his negligence. * * *"

We emphasize that the question being decided by us relates to an action ex contractu under the Uniform Act. Whether, in an action under that Act, a depositor of goods is required to prove negligence when negligence of the warehouseman is alleged in the complaint is not now presented. Nor do we decide whether a depositor of goods under a warehouse receipt contract may waive the contract and proceed in tort for recovery; nor whether the depositor may join an action on the contract with one in tort.

From what has been said it follows that the demurrers to pleas 3 and 4 should have been sustained.

## II.

The question of limiting, by contract, the extent of a warehouseman's liability under the Uniform Act is also one of first impression in Alabama.

Section 506, Tit. 2, supra, patterned after Section 3 of the Uniform Warehouse Receipts Act (3 U.L.A. 13), provides:

"§ 506. Terms which warehouseman may insert in receipt.—A warehouseman may insert in a receipt issued by him, any other terms and conditions, provided such terms and conditions shall not: be contrary to the provisions of this article or the rules and regulations of the state board of agriculture and industries or; in any wise impair his obligation to exercise that degree of care in the safekeeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own." [Emphasis supplied.]

In discussing Section 3 of the Uniform Warehouse Receipts Act, Williston on Contracts, Vol. 4 (Rev.Ed.), § 1046, pp. 2926, 2927, states:

"There is a conflict of authority as to whether subdivision (b) (italicized above) * * * prohibits a warehouseman from limiting his liability for damages to, or loss of, goods to a specified sum unless a higher value is declared and increased charge paid. The better view supports such a limitation if the requisites for the formation of a contract are satisfied. * * *"

The following is from 56 Am.Jur., Warehouses, § 218, p. 420:

"* * * Such a statutory provision has been held not to prevent the parties by contract from determining in advance the actual value of the property stored, for the purpose of fixing the charges in proportion to the value of the property stored and the measure of the responsibility of the warehouseman, as distinguished from a contract exonerating the warehouseman from liability entirely or from liability for a part of the actual value of goods. * * *"

The rule for construing such contracts is thus stated in 67 C.J., Warehousemen and Safe Depositaries, § 99, p. 505:

"Contractual provisions limiting the warehouseman's liability should be construed in the light of applicable statutory provisions, and in accordance with the expressed intent of the parties so far as reasonably ascertainable from the language used, and, where actually or presumably drawn by the warehouseman, should be construed strictly against him and in favor of the bailor."

The Supreme Court of Colorado in French v. Bekins Moving & Storage Co., 118 Colo. 424, 195 P.2d 968, 971, considered, in the light of the Colorado version

of Section 3 of the Uniform Warehouse Receipts Act, a question similar to the one before us, and there said:

"The weight of authority seems to be that a provision declaring an agreed valuation which is known to be less than the value of the goods stored, as the measure of the warehouseman's obligation, is valid: (a) where accepted by fair agreement of the parties, and (b) where the bailor receives thereby a reduced storage rate. 'If assented to by plaintiff, and assuming that it would in fact have been supported by a valuable consideration, the condition [one restricting liability for each package and contents to $25] would not have been unlawful as tending to exempt defendant from liability for its negligence. While a warehouseman may not avoid his liability for negligence, he may nevertheless stipulate with the owner as to what the extent of the latter's recovery shall be, where the rate charged the owner is based upon an agreed valuation which is put upon the property. * * * if the condition was to become a part of the contract, it was necessary that plaintiff's attention be called to it, and that she be advised that the rate to be charged was a reduced rate to be applied in consideration of her consent to the limitation of defendant's liability.' Brasch v. Sloan's Moving & Storage Co., 237 Mo.App. 597, 176 S.W.2d 58, 60."

Among other authorities holding that contracts limiting the liability of the warehouseman to an agreed valuation of the goods stored are not per se invalid as being within the inhibition of statutes patterned after Section 3 of the Uniform Warehouse Receipts Act are the following: George v. Bekins Van & Storage Co., 33 Cal.2d 834, 205 P.2d 1037, 1045; Page v. Ace Van & Storage Co., 87 Cal. App.2d 294, 196 P.2d 816, 819; Silvestri v. South Orange Storage Corp., 14 N.J. Super. 205, 81 A.2d 502, 504; Central Storage Warehouse Company v. Pickering, 114 Ohio St. 76, 151 N.E. 39, 142 A.L.R. 768; Brasch v. Sloan's Moving & Storage Co., 237 Mo.App. 597, 176 S.W.2d 58; French v. Bekins Moving & Storage Co., 118 Colo. 424, 195 P.2d 968; Voyt v. Bekins Moving & Storage Co., 169 Or. 30, 119 P.2d 586, adhered to 169 Or. 30, 127 P.2d 360. See Annotation, 175 A.L.R. 139, Sec. 65. But see Annotation, 175 A.L.R. 141, Sec. 66.

Appellees' pleas 5, 6 and 7 clearly allege that, prior to the bailment, appellant-bailor and appellee-bailee entered into a contract in writing in which the bailor declared that the value of each article or package stored did not exceed $50, and as a consideration for the limited liability the bailee afforded a lower storage rate. The contract affirmatively discloses the bailor had the option of paying a higher rate without limitation as to the value of the stored goods. In view of the above cited authorities it is our opinion that the agreement alleged in appellees' pleas is not within the prohibition of Section 506, Tit. 2, supra. Accordingly, the demurrers to pleas 5, 6 and 7 were properly overruled.

Due to the error in overruling the demurrers to pleas 3 and 4, the judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and MAYFIELD, JJ., concur.